**CLIPPER AIR CARGO, INC., Plaintiff,**

v.

**AVIATION PRODUCTS INTER-NATIONAL, INC., and Union Bank, Defendants.**

No. 2:97–2234–18.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 3, 1997.

Gilbert Scott Bagnell, Edward A. Frazier, Columbia, SC, for Plaintiff.

O. Grady Query, Richard A. Farrier, Jr., N. Keith Emge, Jr., Charleston, SC, for Defendants.

### ORDER

NORTON, District Judge.

This matter is before the court on plaintiff Clipper Air Cargo's (Clipper) motion to remand. Clipper originally filed in state court on May 27, 1997. Alleging diversity jurisdiction, defendant Union Bank (Union) removed the case to this court on July 24, 1997. Defendant Aviation Products International (API) did not join in the petition for removal. Plaintiff opposed removal and filed a motion to remand to state court. Because this court lacks jurisdiction under 28 U.S.C. § 1332, the court now grants plaintiff's motion to remand.

### I. BACKGROUND

This case arises out of a failed 30 million dollar loan. API was purportedly in the

business of setting up airline companies. Clipper hoped to form an airline company to provide air freight service between the United States and China. Clipper contracted with API for 30 million dollars of financing to start the company. Clipper alleges that Union was to provide the actual funds for the loan. The loan never closed, and Clipper never went into business. Incidental to starting its business, Clipper incurred contract liabilities upon which it has defaulted. Clipper is suing API and Union Bank alleging ten causes of action including breach of contract, fraud, negligence, unfair trade practices, tortious interference with a contract, and civil conspiracy.

## II.  REMOVAL JURISDICTION

■■■ Once a case has been removed to federal district court, the court must determine whether it has jurisdiction to hear the case. *Toyota of Florence, Inc. v. Lynch,* 713 F.Supp. 898, 900 (D.S.C.1989). Jurisdiction exists in a removal action if the case could have originally been brought in federal court. *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972). The party seeking removal bears the burden of establishing jurisdiction. *Id.* The removal statutes are to be strictly construed, and must be applied in light of "the clear congressional intention to restrict removal." *Able v. Upjohn Co.,Inc.,* 829 F.2d 1330, 1332 (4th Cir.1987). When removal is not clearly proper, the district court should decline to exercise jurisdiction. *Id.*; *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993); *Lynch,* 713 F.Supp. at 900.

■■■ Union seeks to remove this case based on this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Diversity is determined at the time the action is commenced. *Freeport–McMoRan, Inc. v. K N*

*Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 858–59, 112 L.Ed.2d 951 (1991); *Mullins v. Beatrice,* 489 F.2d 260, 261 (4th Cir.1974). For diversity purposes, a corporation maintains a dual citizenship. A corporation is a citizen of the state in which it was incorporated, and the state in which it has its principal place of business. 28 U.S.C. § 1332(c). In its motion to remand, Clipper argues that removal was improper because the parties lack complete diversity: Clipper and API are both citizens of Nevada because they were both incorporated in Nevada.

■■■ API incorporated in Nevada on August 11, 1995.[1] Nevada revoked API's corporate charter on July 1, 1996 for failure to file the requisite documents with the Nevada secretary of state. *See* Nev. Rev. Stat § 78.175 (1995). Clipper filed its complaint against API on May 27, 1997, almost one year after its charter had been revoked. After revocation of its charter, API's corporate existence could best be described as in limbo. Unquestionably, API no longer enjoyed the right to transact business in Nevada. Nev. Rev.Stat. § 78.175(2) (1995). However, even after its charter had been revoked, API still had certain rights.[2]

After dissolution, a corporation no longer enjoys the right to carry on its normal operations. Its business is limited to those transactions necessary for the winding up of its affairs. Under Nevada law, those transactions include disposing of and conveying its property, collecting and discharging its obligations, distributing its assets, and "prosecuting and defending suits, actions, proceedings, and claims of any kind or character by or against it...." Nev.Rev.Stat. § 78.585 (1995). After dissolution, a corporation remains amenable to suit for two years. *Id.*

Nevada's corporate code does not contain a similar provision for suits against a corporation whose charter has been revoked.[3] Al-

---

**1.** Nevada law therefore governs the corporate status of API. *See generally Chicago Title & Trust Co. v. Forty–One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 124–25, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937) (holding that a private corporation exists under the express law of the state by which it was created).

**2.** Union Bank points out the distinction between dissolution and revocation. Both are subject to the controlling law of Nevada. A corporation

affects its own dissolution, but the state affects revocation of a corporation's charter. In either event, the corporation does not instantaneously cease to exist.

**3.** By implication, the code recognizes that revocation does not immediately terminate the corporation's existence. For a period of five years after revocation, a corporation can have its charter fully re-instated with minimal difficulty. See Nev.Rev.Stat. § 78.180(4) (1997).

though case law is scarce, those courts that have considered the effect of a revocation of a corporation's charter recognize that the corporation may continue to carry on certain transactions even after revocation.[4] *Porter v. Tempa Mining & Milling Co.*, 59 Nev. 332, 93 P.2d 741, 743–44 (1939). *See also Fidelity Metals Corporation v. Risley*, 77 Cal.App.2d 377, 175 P.2d 592, 594–95 (1946) (recognizing that revocation of a charter still allows a corporation to bring a lawsuit within the time period provided by Nevada statute). This court believes that Nevada courts would apply section 78.585 to a corporation's post revocation rights.[5] This court hesitates to speculate that revocation and dissolution should be treated differently when there is no clear guidance from the statute or the Nevada courts to that effect. Since Clipper filed the present action within two years of the revocation of API's charter, the suit is proper under section 78.585. Nev. Rev Stat. § 78.585 (1995).

■■■■■ At oral argument Union conceded that if API is a proper party to this suit, removal is improper on the face of the complaint because the parties lack complete diversity. Union's second argument is that API's citizenship is irrelevant for removal purposes because API ·was fraudulently joined in the lawsuit. *See Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1315–16 (7th Cir.1994); *Brantley v. Vaughan*, 835 F.Supp. 258, 261 (D.S.C.1993). To prove fraudulent joinder, the removing party must establish "that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court...." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981)) (emphasis in original). *See also Hoosier Energy*, 34 F.3d at 1315–16; *Brantley*, 835 F.Supp. at 260–61. Union's

burden in establishing fraudulent joinder is heavy:

the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor (citation omitted). A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted (citation omitted).

*Marshall v. Manville Sales Corp.* 6 F.3d 229, 232–33 (4th Cir.1993). Accepting all of Clipper's allegations as true, Clipper has a legitimate claim against API.

■■■■ Citing *Selfix Inc. v. Bisk*, 867 F.Supp. 1333 (N.D.Ill.1994), Union next argues that API's citizenship should be disregarded because the real dispute in this case is between Clipper and Union. This court disagrees; the source of the whole dispute is the contract between Clipper and API. *Selfix* involved a contract secured by a letter of credit. Alleging that defendant breached his contract with plaintiff, plaintiff sought to enjoin the bank from paying on an outstanding letter of credit issued to defendant. In *Selfix* the court disregarded defendant bank's citizenship because the bank had no stake in the dispute between the remaining parties. Ultimately, the bank stood no chance of losing its money. If the bank paid under the letter of credit, then plaintiff was obligated to cover the payment; if the bank did not pay under the letter of credit, then its money would never leave the bank. In *Selfix* the court disregarded the citizenship of the bank because the real dispute was between the contracting parties. In the present case, Union argues that the real dispute is not between the contracting parties but is between plaintiff and the bank. Unlike *Selfix*, Union is arguing that the court disregard defendant's citizenship, not the bank's citizenship. Because API clearly has an interest in the

---

4. In effect, a revocation is treated exactly the same as a dissolution.

5. The referenced cases were decided under a prior version of § 78.585. The prior version applied "whether [corporations] expire by their own limitation, or are otherwise dissolved...." See Nevada Code of Laws § 1644 (1929). Although the statute has since been amended and

the "or otherwise dissolved" language has been omitted, the omission does not change the section's applicability to a corporation whose charter has been revoked. Absent guidance from Nevada courts and based on Nevada's prior interpretation of its corporate code, this court finds that the section is equally applicable to corporations during the time period after dissolution or after their charter has been revoked.

present dispute, its citizenship remains relevant for jurisdictional purposes.

■ Union next submits that API has not carried on business in South Carolina for several years and it is basically a sham defendant. This court is well aware of API's financial status, but that does not factor in to the court's jurisdictional determination. In *Bellone v. Roxbury Homes, Inc.*, 748 F.Supp. 434 (W.D.Va.1990), the district court outlined the distinction between a defendant who was fraudulently joined and a defendant who was judgment proof. Although the principal wrongdoer may be judgment proof its joinder is not necessarily fraudulent because its business is a failure. *See Bellone*, 748 F.Supp. at 437. The situation in the present case parallels that of *Bellone*, and API can not be properly classified as a sham defendant. As such, its citizenship must be considered for jurisdictional purposes.

■ Alleging that Union's attempted removal was frivolous, plaintiff moved for an award of attorney's fees pursuant to 28 U.S.C. § 1447(c). Despite this court's ultimate decision to remand the case, under the fact of this case Union advanced a reasonable argument to support its removal. Union's removal was not frivolous and does not warrant an award of attorney's fees.

### III. CONCLUSION

Because the parties lack the requisite diversity for this court to establish jurisdiction under 28 U.S.C. § 1332,[6] it is therefore, **ORDERED**, that this case be **REMANDED** to the Court of Common Pleas for the Ninth Judicial Circuit of South Carolina, and that plaintiff's motion for attorney's fees pursuant to 28 U.S.C. § 1447(c) be **DENIED**.

**AND IT IS SO ORDERED.**

---

6. Had Union established subject matter jurisdiction, it is very doubtful that Union would have the requisite minimum contacts under South Carolina's long arm statute to subject it to personal jurisdiction. Its only contact with this state seems to have been one form letter sent in response to an inquiry made by API. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624–26 (4th Cir.1997); *Magic Toyota v. Southeast Toyota Distributors*, 784 F.Supp. 306 (D.S.C. 1992); *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F.Supp. 260 (D.S.C.1995).