EXECUTIVE MANAGEMENT, LTD., a California Corporation, Appellant, v. TICOR TITLE INSURANCE COMPANY, a Foreign Corporation; BARBARA MARKS, an Individual; THE MANLEY MARKS AND BARBARA MARKS 1988 TRUST, BARBARA MARKS, Trustee; MARKS PLAZA, a Nevada Corporation; PALMALL PROPERTIES, INC., a Nevada Corporation; and ARTHUR H. SHIPKEY, an Individual, Respondents.

No. 35122

January 24, 2002                                     38 P.3d 872

---

[27]*Id.*

*George R. Carter,* Las Vegas, for Appellant.

*Cohen, Johnson, Day, Jones & Royal* and *Geoffrey A. Potts,* Las Vegas, for Respondents Palmall Properties and Shipkey.

*Lionel Sawyer & Collins* and *David N. Frederick* and *Paul R. Hejmanowski,* Las Vegas, for Respondent Ticor Title.

*Ralph J. Rohay,* Las Vegas, for Respondent Marks.

## OPINION

*Per Curiam:*

### FACTS

This case, involving alleged negligence, fraud, and breach of contract stemming from a troubled property sale, presents two questions for our review: (1) whether NRS 80.210 requires dismissal of a foreign corporation's action when the corporation has failed to comply with the qualification requirements of NRS 80.010 through 80.040; and (2) whether the right to trial by jury is revived following an appeal and remand when the right previously had been waived.

This case was appealed to this court before, resulting in remand to the district court. A detailed factual statement regarding Executive's claims and the history of this case before the first appeal is found in our previous opinion, *Executive Management v. Ticor Title Insurance Co.*[1]

Before the first appeal, the parties consented to withdrawing Executive's previous jury trial request. Following appeal and remand from this court, however, Executive changed its mind and filed another demand for trial by jury. The district court rejected Executive's demand.

Thereafter, with respondent Ticor Title Insurance Company leading the way, the respondents filed motions for summary judgment based on Executive's failure to "qualify" to conduct busi-

---

[1]114 Nev. 823, 963 P.2d 465 (1998).

ness in Nevada by complying with the foreign corporation qualification requirements of NRS 80.010 through 80.040. Based on our case law interpreting NRS 80.210, which sets forth penalties for a foreign corporation failing to qualify, Ticor asserted that Executive's action should be dismissed.

When Executive filed this action in May of 1999, it had not complied with the foreign corporation qualification requirements. Although Executive now argues that it was not obligated to do so, in March of 1993 Executive qualified by filing the required documents and paying the fees. Its certificate to do business, however, expired in December of 1994 and remained unrenewed until May of 1999. Spurred by Ticor's motion, in May of 1999 Executive qualified to do business in Nevada by filing the required documents and paying all fees back to 1994. The Secretary of State then issued Executive a certificate of reinstatement confirming that Executive was in good standing for the years 1994-1999.

The trial court granted the respondents' motions for summary judgment, finding that Executive had been doing business in Nevada, had failed to comply with the filing requirements of NRS 80.015, and therefore could not maintain the action. Accordingly, the district court dismissed Executive's action. The dismissal was with prejudice because the statute of limitations had passed on all of Executive's claims. Executive appealed.

## DISCUSSION

*NRS 80.210 does not require dismissal of a foreign corporation's action*

We review summary judgment orders de novo.[2] Summary judgment is only upheld when a review of the record in a light most favorable to the non-moving party reveals that there are no triable issues of material fact and that the moving party is entitled to judgment as a matter of law.[3]

Before conducting business in Nevada, foreign corporations are required to "qualify" by complying with the foreign corporation requirements of NRS 80.010 through 80.040. The question of whether a foreign corporation is "doing business" and required to qualify, although guided somewhat by NRS 80.015, is often a laborious, fact-intensive inquiry resolved on a case-by-case basis.[4]

[2]*Day v. Zubel,* 112 Nev. 972, 977, 922 P.2d 536, 539 (1996).

[3]*Id.* at 977, 922 P.2d at 538.

[4]*See, e.g., Sierra Glass & Mirror v. Viking Industries,* 107 Nev. 119, 122, 808 P.2d 512, 513 (1991) ("[T]he test to determine if a company is doing business in a state is two pronged. Courts look first to the nature of the company's business functions in the forum state, and then to the quantity of business conducted in the forum state." (citing *Eli Lilly & Co. v. Sav-On-Drugs,* 366 U.S. 276 (1961))); *In re Hilton Hotel,* 101 Nev. 489, 706 P.2d 137 (1985); *Peccole v. Fresno Air Serv., Inc.,* 86 Nev. 377, 469 P.2d 397 (1970).

Failure to qualify can result in certain penalties set forth in NRS 80.210. One of those penalties provides that the foreign corporation "may not commence or maintain any action or proceeding in any court of this state *until* it has fully complied with the provisions of NRS 80.010 to 80.040, inclusive."[5] What is meant by the terms "maintain" and "until" is the subject of our discussion.

The parties argue at great length regarding whether Executive was "doing business" under either the current or the former versions of NRS 80.015 during the relevant time periods that would require Executive to comply with the foreign corporation qualification statutes. But for purposes of our analysis, we simply assume that Executive was doing business and therefore required to qualify.

This assumed, our holding in *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*[6] indicates that the district court was correct in dismissing Executive's action with prejudice, even in the face of Executive's retroactive compliance:

> [B]elated compliance with the foreign corporation qualification statutes does not defeat the applicability of the statute of limitations during the period of time the corporation was in noncompliance. Institution of suit before compliance with filing requirements does not toll the statute of limitations, nor does later compliance operate retroactively to permit continuation of the action if the statute of limitations had run between filing of the suit and such compliance.[7]

We followed this rule in later cases.[8] We now, however, take the opportunity to reconsider *League to Save Lake Tahoe* and its interpretation of NRS 80.210.

Our objective in construing NRS 80.210 is to give effect to the legislature's intent.[9] In so doing, we first look to the plain lan-

---

[5]NRS 80.210(1)(b) (emphasis added).

[6]93 Nev. 270, 563 P.2d 582 (1977), *overruled on other grounds by County of Clark v. Doumani,* 114 Nev. 46, 952 P.2d 13 (1998).

[7]*Id.* at 275, 563 P.2d at 585 (citations omitted).

[8]*See, e.g., Nevada National Bank v. Snyder,* 108 Nev. 151, 826 P.2d 560 (1992) (requiring the district court to dismiss a foreign corporation's action for failure to comply with NRS 80.030); *Atlantic Commercial v. Boyles,* 103 Nev. 35, 38, 732 P.2d 1360, 1362 (1987) (holding that where a foreign corporation "had complied with the qualifying statutes prior to dismissal, dismissal, if at all, should have been without prejudice"); *Bader Enterprises, Inc. v. Olsen,* 98 Nev. 381, 649 P.2d 1369 (1982) (affirming the district court's dismissal of an action for the plaintiff foreign corporation's failure to comply with NRS 80.030).

[9]*Cleghorn v. Hess,* 109 Nev. 544, 548, 853 P.2d 1260, 1262 (1993).

guage of the statute.[10] Where the statutory language is ambiguous or otherwise does not speak directly to the issue, however, we construe it according to what " 'reason and public policy would indicate the legislature intended.' "[11]

NRS 80.210 is susceptible to a different construction than the construction that *League to Save Lake Tahoe* relied on. Construing the statutory term "maintained," the *League to Save Lake Tahoe* court concluded that an unqualified foreign corporation could only maintain a previously commenced cause of action if the corporation had been qualified at the time it filed the action but "subsequently became unqualified because of failure to comply with continuing statutory requirements."[12] On that reasoning, the court determined that the actions of unqualified foreign corporations should be dismissed. But an equally tenable interpretation of the word "maintained" is "carry on" or "continue,"[13] implying that the foreign corporation should not be allowed to proceed with its action "until it has fully complied with the" qualification requirements after its failure to comply has been discovered. In this light, refusing to allow a foreign corporation to "maintain" an action does not require its dismissal.

The majority of states follow this more forgiving approach—rather than dismiss an action filed by an unqualified foreign corporation outright, most states with statutes similar to Nevada's simply stay the action until the corporation qualifies.[14] The Model Business Corporation Act, parts of which Nevada has adopted by statute,[15] explains the purpose of this approach: "to induce corporations that are required to obtain a certificate of authority" but "without imposing harsh or erratic sanctions."[16] The Model Act

[10]*Id.*

[11]*State, Dep't of Mtr. Vehicles v. Lovett,* 110 Nev. 473, 477, 874 P.2d 1247, 1249-50 (1994) (quoting *State, Dep't Mtr. Vehicles v. Vezeris,* 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986)).

[12]93 Nev. at 273, 563 P.2d at 584.

[13]*Black's Law Dictionary* 657 (6th ed. abridged 1991).

[14]Annotation, *Application of Statute Denying Access to Courts or Invalidating Contracts Where Corporation Fails to Comply With Regulatory Statute as Affected by Compliance After Commencement of Action,* 23 A.L.R. 5th 744, 765 (1994) (reviewing a number of states with statute's similar to Nevada's and noting that "a strong majority of these courts have held that subsequent compliance allows the corporation to continue the suit"); *see also Gratrix v. Pine Tree, Inc.,* 677 P.2d 1264 (Alaska 1984); *Johnny's Pizza House, Inc. v. Huntsman,* 844 S.W.2d 320 (Ark. 1992); *Roldan Corp. N.V. v. District Court,* 716 P.2d 120 (Colo. 1986); *Triple T., Inc. v. Jaghory,* 612 So. 2d 642 (Fla. Dist. Ct. App. 1993); *Hudson Farms, Inc. v. McGrellis,* 620 A.2d 215 (Del. 1993).

[15]*Compare* NRS 80.010, *and* NRS 80.015, *with Model Business Corporation Act Annotated* § 15.01 (3d ed. 1997) (hereinafter "Model Act").

[16]*Model Act* § 15.02 cmt.

observes that this approach eliminates the temptation to wait until the applicable statutes of limitations have run before raising the failure-to-qualify defense.[17]

Ticor is concerned that without the penalty of dismissal propounded by *League to Save Lake Tahoe,* there would be no incentive for unqualified foreign corporations to qualify, and fraud on Nevada citizens could result. Although we too expressed this concern in *Bader Enterprises Inc. v. Olsen,*[18] upon further consideration, we conclude that this concern does not justify the extraordinarily harsh penalty of dismissal. First, staying an action that has been commenced by an unqualified foreign corporation will provide sufficient incentive to encourage compliance. Second, NRS 80.210 sets forth its own penalties and enforcement procedures, utilizing district attorneys and the attorney general under the governor's direction to enforce the qualification requirements—the judiciary need not impose penalties beyond those provided. Third, the determination of whether a foreign corporation is actually "doing business" in this state and therefore required to qualify involves a fact-intensive and often nebulous inquiry, and thus, the failure to qualify can be the result of a "bona fide disagreement" regarding the scope of NRS 80.015, which provides only limited guidance as to the activities that do not constitute doing business.[19] Finally, the fact that the Secretary of State is willing, as he was in this case, to reinstate foreign corporations that pay all past due fees, and forgive the fault in every respect, authorizing the corporation to "transact its business in the same manner as if the aforesaid filing fees, licenses, penalties, and costs had been paid when due,"[20] indicates that failing to qualify is not so egregious that it warrants dismissal with prejudice, what is perhaps a court's most severe civil penalty.

Thus, we overrule *League to Save Lake Tahoe's* construction of NRS 80.210. Henceforth, the district court should stay an unqualified foreign corporation's action until the foreign corporation qualifies. Failure to promptly qualify, however, could result in dismissal.[21]

---

[17]*Id.*

[18]98 Nev. 381, 384, 649 P.2d 1369, 1370 (1982) (noting that the filing requirement of NRS 80.030(1) "serves to promote the public policy of this State to alert and protect its citizens in their transactions with defunct foreign corporations").

[19]*Model Act* § 15.02 cmt.

[20]Certificate of Reinstatement, issued by Nevada's Secretary of State to Executive on May 24, 1999.

[21]*Cf.* NRS 80.210(2) (allowing an unqualified foreign corporation to commence an action seeking "an extraordinary remedy" before complying with

*Following appeal and remand, a party may seek relief from its ini-
tial waiver of its right to jury trial under NRCP 39(b)*

We next consider Executive's right to a trial by jury. As noted
above, the district court refused to grant Executive's demand for
a jury trial because Executive had waived its right before the first
appeal. Urging us to uphold the district court's decision, Ticor
points to NRCP 38(b), which requires that a party demand a trial
by jury "at any time after the commencement of the action and
not later than the time of the entry of the order first setting the
case for trial," before November 1, 1994, in this case. We have
not addressed this precise issue before. Courts addressing this
issue have rendered decisions running a full spectrum. At one
extreme, the Rhode Island Supreme Court has held "that a waiver
of a trial by jury is a waiver for all time."[22] At the other extreme,
the Supreme Court of Oklahoma has held that "[t]he right of trial
by jury may be demanded and exercised as if the remanded pro-
ceedings were initiated afresh."[23]

We prefer the more moderate approach taken by the federal
courts. Federal cases interpreting the Federal Rules of Civil
Procedure "are strong persuasive authority, because the Nevada
Rules of Civil Procedure are based in large part upon their fed-
eral counterparts."[24] The federal courts allow a party that initially
waived its right to a trial by jury to seek relief from the waiver:

> When the right to a jury trial is waived in the original case
> by failure to timely make the demand, or by affirmative with-
> drawal of the demand, the right is not revived by the order-
> ing of a new trial. [Nevertheless a] party who wishes to
> obtain a jury trial on remand after waiver may move under
> [FRCP] 39 for relief in the court's discretion.[25]

Thus, federal courts allow a motion for relief from the initial
waiver based on FRCP 39(b), which states, "notwithstanding the
failure of a party to demand a jury in an action in which such a
demand might have been made of right, the court in its discretion

NRS 80.010-.040, but requiring the district court to dismiss the action if
the corporation does not comply within forty-five days after the action is
commenced).

[22]*Shepard Co. v. General Motors Truck Co.,* 146 A. 477, 478 (R.I. 1929)
(finding that a waiver of jury trial was permanent and binding on a case
remanded for new trial).

[23]*Seymour v. Swart,* 695 P.2d 509, 512 (Okla. 1985).

[24]*See Las Vegas Novelty v. Fernandez,* 106 Nev. 113, 119, 787 P.2d 772,
776 (1990).

[25]8 James Wm. Moore et al., *Moore's Federal Practice* § 38.52[7][c] (3d
ed. 2001) (footnote omitted) (citing *McGowan v. U.S.,* 296 F.2d 252, 256
(5th Cir. 1961)).

upon motion may order a trial by a jury of any or all issues.'' NRCP 39(b) mirrors the federal rule. Also, although no case speaks to this precise issue, earlier Nevada cases suggest this approach is preferable.[26]

In this case, it is unclear from the record whether the district court, in denying Executive's demand, exercised its discretion and considered the circumstances that Executive claims justify relief from the waiver or whether the district court simply denied the motion on the assumption that Executive was absolutely bound by its first waiver. Thus, on remand the district court should allow Executive to make the proper motion and determine whether Executive has shown circumstances warranting relief from its initial waiver.

## CONCLUSION

In conclusion, we hold that NRS 80.210 does not contemplate automatic dismissal of an unqualified foreign corporation's action. Thus, because Executive had complied retroactively with the foreign corporation qualification requirements, the district court should have allowed the action to proceed. Accordingly, we reverse the district court's summary judgment and remand for proceedings consistent with this opinion. Additionally, we conclude that NRCP 39(b) allows Executive to seek relief from its initial waiver of its right to trial by jury.

---

[26]*See Walton v. District Court,* 94 Nev. 690, 695, 586 P.2d 309, 312 (1978) (acknowledging a party's right to request a jury trial under NRCP 39(b) notwithstanding the party's failure to submit a ''timely and proper demand'' and noting that the decision to grant or deny the request is within the district court's discretion); *see also Hardy v. First Nat'l Bank of Nev.,* 86 Nev. 921, 922-23, 478 P.2d 581, 582 (1970) (noting that the plaintiff, after failing to file a timely demand for a jury trial, could have proceeded under NRCP 39(b) but failed to do so); *Kohlsaat v. Kohlsaat,* 62 Nev. 485, 488, 155 P.2d 474, 475 (1945) (noting, under the predecessor rule to NRCP 39, that the decision to grant relief from a waiver of the right to jury trial rests within the sound discretion of the district court).