**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In the Matter of: GARRETT KELLY
KRAUSE,

       *Debtor,*

AMERICAN SPORTS RADIO NETWORK,
INC., a Nevada corporation; and
SOUND MONEY INVESTORS, INC., a
Nevada corporation,

       *Appellants,*

    v.

GARRETT KELLY KRAUSE,

       *Appellee.*

No. 07-55131

D.C. No.
CV-06-03779-AG

ORDER
CERTIFYING
QUESTION TO
THE SUPREME
COURT OF
NEVADA

Filed October 10, 2008

Before: Raymond C. Fisher and Richard A. Paez,
Circuit Judges, and James L. Robart,* District Judge.

**COUNSEL**

Paul J. Laurin, Weiner & Laurin, 15760 Ventura Blvd., Suite
1727, Encino, California 91436, for the appellants.

Irv M. Gross, Robinson, Diamant & Wolkowitz, 1888 Century Park East, Suite 1500, Los Angeles, California 90067, for
the appellee.

*The Honorable James L. Robart, United States District Judge for the
Western District of Washington, sitting by designation.

14381

## CERTIFICATION ORDER

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, and as further explained below, we respectfully certify the following question to the Nevada Supreme Court:

> Under Nevada law, may a domestic corporation whose charter has been revoked under Nevada Revised Statutes section 78.175(2) prosecute a lawsuit either (a) in its own corporate name or (b) through its directors? If not, is the defendant entitled to have such a lawsuit dismissed with prejudice, or must the plaintiff corporation first be given a reasonable opportunity to reinstate its charter? *Cf. Executive Mgmt. Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872 (Nev. 2002).

The answer to this question will be determinative of the matter pending before this court, and there is no clearly controlling precedent in the decisions of the Nevada Supreme Court.

Submission of this case is vacated and all further proceedings are stayed pending receipt of an answer to the certified question. The parties shall notify the Clerk of this court within one week after the Nevada Supreme Court accepts or rejects the certified question, and again within one week after the Nevada Supreme Court renders its answer.

## I.   Background

Appellee Garrett Kelly Krause ("Krause") filed a Chapter 7 personal bankruptcy petition in the Central District of California in 2005. Appellants American Sports Radio Network, Inc. ("ASRN") and Sound Money Investors, Inc. ("SMI"), both Nevada corporations, were creditors of Krause's bankruptcy estate as the result of an unsatisfied Nevada civil judgment for several million dollars. The bankruptcy court

designated a "bar date" of January 13, 2006, for asserting exceptions to discharge. *See* 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c). On January 12, 2006, ASRN and SMI filed an adversary complaint alleging nondischargeability of the debt arising from their unsatisfied judgment under 11 U.S.C. §§ 523(a)(2), (a)(4), and/or (a)(6).[1]

On March 7, 2006, Krause filed a motion to dismiss ASRN and SMI's adversary complaint on the ground that ASRN and SMI lacked capacity to sue.[2] In support of the motion, Krause provided documentation showing that ASRN's corporate charter had been revoked by the state of Nevada on May 1, 2002, for failure to pay annual fees and to file its annual list of corporate officers. *See* Nev. Rev. Stat. § 78.150 (2007). SMI's charter had been revoked on June 1, 2002, for the same reasons. In opposing the motion to dismiss, ASRN and SMI provided documentation showing that after Krause's motion was served, and before the bankruptcy court held a hearing on Krause's motion, ASRN and SMI corrected their delinquent filing obligations and moved for reinstatement of their charters. The Nevada Secretary of State reinstated ASRN's charter on March 28, 2006, and SMI's on April 3, 2006.

On May 16, 2006, the bankruptcy court held a hearing on Krause's motion to dismiss. At the conclusion of that hearing, the bankruptcy court granted Krause's motion and dismissed the adversary proceeding with prejudice. Applying

---

[1]These subsections apply to debts arising "[l]oosely speaking, . . . from intentional wrongdoing of various sorts (respectively, fraud, fiduciary misconduct, and the commission of malicious torts)." *Beezley v. Cal. Land Title Co.* (*In re Beezley*), 994 F.2d 1433, 1435 (9th Cir. 1993) (O'Scannlain, J., concurring).

[2]Although the bankruptcy court referred to the question in this case as one of "standing" to sue, we note that it is capacity, not standing, which is at issue. *See De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 878 n.4 (9th Cir. 2000) (distinguishing between standing and capacity to sue); 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1559 (2d ed. 1990) (same).

Nevada law, the bankruptcy court concluded that the plain, unambiguous language of Nevada Revised Statutes section 78.175(2)—stating that a corporation whose charter has been revoked shall not "transact business"—precluded the filing of a lawsuit by such a corporation. The court acknowledged the Nevada Supreme Court's holding in *Executive Management Ltd. v. Ticor Title Insurance Co.*, 38 P.3d 872 (Nev. 2002), but found it inapplicable to the facts of this case because *Executive Management* dealt with a different statute (relating to foreign corporations) which the Nevada Supreme Court found to be ambiguous.[3]

On appeal to the district court, the district court affirmed, agreeing with the bankruptcy court that section 78.175(2)'s prohibition on transacting business was "unambiguous" and "include[d] suing a debtor in an adversary proceeding." The district court also found *Executive Management* distinguishable. ASRN and SMI filed a timely appeal.[4]

On appeal to this court, ASRN and SMI contend that Nevada law is unclear regarding the capacity of a corporation to continue a lawsuit when its charter has been revoked for failure to comply with its annual fee and filing obligations. They therefore request that we certify a question that addresses the issue to the Nevada Supreme Court. Although Krause states that he "does not necessarily oppose certification," he argues that (1) unlike in *Executive Management*, the

---

[3]In *Executive Management*, the defendant moved to dismiss a lawsuit by a plaintiff *foreign* corporation that had failed to qualify to do business in Nevada and was thus prohibited from "commenc[ing] or maintain[ing] any action" in Nevada under section 80.055(1)(b). *See Executive Mgmt.*, 38 P.3d at 874. Overruling prior precedent, *see League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 563 P.2d 582, 584 (Nev. 1977), however, the court held that the suit should *not* be dismissed, but rather stayed, and that, if the plaintiff corporation promptly corrected its deficiencies and qualified to do business in Nevada, the lawsuit could be maintained. *See Executive Mgmt.*, 38 P.3d at 876.

[4]We have jurisdiction under 28 U.S.C. § 158.

statutory language of section 78.175(2) clearly prohibits ASRN and SMI from maintaining their lawsuit; and (2) even if section 78.175(2) is interpreted, consistent with *Executive Management*, to mean that a domestic corporation with a revoked charter may continue a lawsuit after promptly obtaining reinstatement of its charter, ASRN and SMI cannot benefit from such a rule because they did not pursue reinstatement promptly.

## II.   Discussion

We must determine, first, whether the bankruptcy court[5] properly ruled that ASRN and SMI lacked capacity to sue when they filed their complaint on January 12, 2006, because their corporate charters had been revoked pursuant to section 78.175(2). Second, if ASRN and SMI lacked capacity to sue when they filed their adversary action, we must determine whether the bankruptcy court erred by not allowing the subsequent reinstatement of their charters to relate back to the date of filing of their complaint. Finally, even if ASRN and SMI lacked capacity to sue and the subsequent cure of that defect did not relate back, we must determine if the bankruptcy court erred by dismissing the complaint rather than granting ASRN and SMI leave to join their corporate directors as real parties in interest.

The Federal Rules of Civil Procedure and Bankruptcy Procedure require us to apply Nevada law to determine ASRN and SMI's capacity to sue. *See* Fed. R. Civ. P. 17(b) ("Capacity to sue . . . is determined . . . for a corporation, by the law under which it was organized . . . ."); Fed. R. Bankr.

---

[5]Because our review of the district court's judgment is de novo, *Metcalf v. Golden* (*In re Adbox, Inc.*), 488 F.3d 836, 839 (9th Cir. 2007), our ultimate focus is on the bankruptcy court's ruling. We review de novo the bankruptcy court's grant of a motion of dismiss. *Id.* at 840. We also review de novo the bankruptcy court's interpretation of the Federal Rules. *See Brawders v. County of Ventura* (*In re Brawders*), 503 F.3d 856 (9th Cir. 2007).

P. 7017 (making Federal Rule of Civil Procedure 17 applicable to adversary proceedings in bankruptcy court). Similarly, in order to determine whether the directors should have been substituted as plaintiffs, we must determine the powers, under Nevada law, of directors of corporations whose charters have been revoked. In summary, this case requires us to determine the nature and extent of the powers of a Nevada corporation, after its charter has been revoked under Nevada Revised Statutes section 78.175(2), to institute or maintain a suit, either in its own name or through its directors.

Among the subsidiary questions that confront us are these: May a Nevada corporation sue in its own name when its charter has been revoked pursuant to section 78.175(2)? *Cf.* Nev. Rev. Stat. § 78.060(2) ("Every corporation, by virtue of its existence as such, is entitled . . . [t]o sue and be sued in any court of law or equity."). If not, do its directors acquire the powers of receivers or trustees, including the power to sue on the corporation's causes of action? *See id.* § 78.175(5) ("If the charter of a corporation is revoked . . . as provided in subsection 2, all the property and assets of the defaulting domestic corporation must be held in trust by the directors of the corporation as for insolvent corporations . . . ."); *id.* § 78.635(2)(b) (providing that a trustee or receiver of an insolvent corporation may "institute suits at law or in equity for the recovery of any estate, property, damages or demands existing in favor of the corporation"). If a corporation whose charter has been revoked pursuant to section 78.175(5) has filed suit in its own name, and an objection to its capacity to sue is made, must the court dismiss the case? *Cf. League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 563 P.2d 582, 584 (Nev. 1977) (applying analogous rule to foreign corporations), *overruled by Executive Mgmt.*, 38 P.3d 872. If the statute of limitations has run in the meantime, must the dismissal be with prejudice? *Cf. id.* at 584-85. Or should a court confronted with an objection to a Nevada corporation's capacity to sue because its charter has been revoked instead stay the case to allow the corporation to promptly obtain reinstatement of its charter and

to maintain the action? *See* Nev. Rev. Stat. § 78.180 (providing that the Secretary of State "shall" reinstate a corporate charter upon cure of underlying deficiency, and that such reinstatement "relates back to the date on which the corporation forfeited its right to transact business . . . and reinstates the corporation's right to transact business as if such right had at all times remained in full force and effect"); *cf. Executive Mgmt.*, 38 P.3d at 876 (applying analogous rule to foreign corporations).

## A.   The meaning of "transact business" under section 78.175(2)

As a threshold matter, we are unsure whether, or to what extent, the revocation of a corporate charter deprives a Nevada corporation of its capacity to sue under Nevada law. Section 78.175(2) provides that, upon revocation of the charter, a corporation's "right to transact business is forfeited." Although the term "transact business" is not defined within section 78.175, nor in the set of general definitions applicable to section 78.175, *see* Nev. Rev. Stat. § 78.010, both the bankruptcy court and the district court interpreted this term to mean, among other things, that a corporation encompassed by the statute could not initiate or prosecute lawsuits. The district court explained, without citation, that section 78.175(2) "unambiguously prohibits a corporation who i[s] i[n] default on the requisite filing obligations from transacting any business. This would include suing a debtor in an adversary proceeding." Krause similarly argues that the statutory language of section 78.175(2) "is unambiguous with respect to the termination of the corporation's right to transact business, which *necessarily includes the right to pursue litigation*" (emphasis added).

We cannot agree that the "plain language" of section 78.175(2) controls, and we are unaware of any controlling precedent from the Nevada courts on this question. Although the statute prohibits *transacting business*, whether or not

transacting business includes *pursuing litigation* remains ambiguous. *Cf. Merriam-Webster's Collegiate Dictionary* 167, 1327 (11th ed. 2005) ("Business . . . 3a: a usually commercial or mercantile activity engaged in as a means of livelihood") ("Transact . . . 2: to carry on the operation or management of"). Some corporations are primarily in the business of collecting debts and/or filing lawsuits. But most corporations are primarily engaged in some other business. For example, ASRN and SMI were in the business of creating and distributing radio programming. The term "transact business" probably could be construed to include pursuing litigation without doing violence to the text of section 78.175(2). Nevertheless, without guidance from the Nevada courts, we cannot conclude that it must *necessarily* be so construed.[6]

## B. The powers of corporate directors under section 78.175(5)

Assuming the statutory term "transact business" in section 78.175(2) includes the filing of lawsuits, ASRN and SMI had forfeited their right to file lawsuits at the time they filed their complaint. We are unsure, however, whether the corporations' directors had the right to file lawsuits on behalf of the corpo-

---

[6]The specific uses of the term "transact business" in related provisions of the Nevada Revised Statutes do not necessarily support the notion that pursuing litigation constitutes transacting business under section 78.175(2). For example, with regard to foreign corporations, "[m]aintaining, defending or settling any proceeding" in Nevada is listed as one of numerous "[a]ctivities *not* constituting transaction of business." Nev. Rev. Stat. § 80.015 (emphasis added). *Cf. id.* § 80.055(1)(b) (providing specifically that a foreign corporation which has defaulted on its qualification requirements "may not commence or maintain any action or proceeding" in Nevada courts). Further, a dissolved corporation which continues in existence only for the purpose of winding up "continues as a body corporate for the purpose of prosecuting and defending suits" as well as collecting its debts and discharging its obligations—though it may not "continu[e] the business for which it was established." *Id.* § 78.585; *see also Clipper Air Cargo, Inc. v. Aviation Prods. Int'l, Inc.*, 981 F. Supp. 956, 958 (D.S.C. 1997) (citing Nev. Rev. Stat. § 78.585).

rations. As noted above, section 78.175(5) specifically provides that when a corporation's charter is revoked—and its right to "transact business" thus forfeited—the corporation's "property and assets" shall be "held in trust by the directors of the corporation as for insolvent corporations." Nev. Rev. Stat. § 78.175(5). This suggests that the corporation, itself, is stopped dead by revocation of the charter, but that the directors step into its shoes, at least for some purposes. *Cf. Porter v. Tempa Mining & Milling Co.*, 93 P.2d 741, 745 (Nev. 1939) (providing, under previous version of statute, that corporation was "dead for all purposes" other than those preserved by statute).[7] Moreover, under Nevada insolvency law, a receiver or trustee for an insolvent corporation specifically acquires the power to file suit to "recover[ ] any estate, property, damages or demands existing in favor of the corporation," Nev. Rev. Stat. § 78.634(2)(b), which would seem to include the outstanding judgment sued upon in this case.

If the directors of ASRN and SMI, like trustees of insolvent corporations in Nevada, were empowered to sue to collect ASRN and SMI's debts, then the bankruptcy court should not have dismissed this case, but should have granted their request for leave to join the directors as the real parties in interest. *See* Fed. R. Civ. P. 17(a); *cf.* Nev. Rev. Stat. § 78.695 ("[U]pon application [a receiver] shall be substituted as party plaintiff . . . in the place and stead of the corporation in any suit or proceeding at law or in equity which was pending at the time of his appointment.")

---

[7]On similar facts, a district court in the District of South Carolina has relied on *Porter* to conclude that the powers of a Nevada corporation whose charter has been revoked for failure to satisfy annual filing requirements should be determined by reference to the rules for dissolved corporations. *See Clipper Air Cargo, Inc. v. Aviation Prods. Int'l, Inc.*, 981 F. Supp. 956, 58-59 & nn. 2-5 (D.S.C. 1997) (holding that a corporation whose charter has been revoked under section 78.175(2) retains the powers of a dissolved corporation, as provided in section 78.585). This approach, however, appears to conflict with the express statement in section 78.175(5) that the directors of the corporation must hold its property in trust "as for *insolvent* corporations." (emphasis added).

## C.   The effect of reinstatement

Assuming (1) that "transact[ing] business" under section 78.175(2) includes pursuing litigation and (2) that the corporations' directors were not empowered to act in the corporations' stead, we are yet unsure whether the bankruptcy court was correct to *dismiss the case* due to the revocation of ASRN and SMI's charters. Although we have found no controlling Nevada case law on this question, under the law of many other states, dismissal would have been improper where the charters had been reinstated before the court ruled on the motion or within the time period allowed by the court.[8] Furthermore, in somewhat analogous circumstances involving foreign corporations, the Nevada Supreme Court recently changed course from a strict approach to capacity to sue, resulting in forfeitures, to a more tolerant regime. *See Executive Mgmt.* 38 P.3d at 876 ("Henceforth, the district court should stay an unqualified foreign corporation's action until the foreign corporation qualifies. Failure to promptly qualify, however, could result in dismissal.").[9]

---

[8]*See* 23 A.L.R. 5th 744 § 8[a] (1994) ("The majority of courts have held that where the statute suspends corporate powers until compliance with the statutory requirements is made, compliance, after suit, is sufficient to remove the corporation's disqualification to carry on the suit."); *see also* 3 Model Bus. Corp. Act Ann. ("MBCA") § 14.21 (2008) (providing that an "administratively dissolved" corporation "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 14.05"); *id.* § 14.05 (stating that winding up specifically includes "collecting its assets," and that dissolution does not "prevent commencement of a proceeding by . . . the corporation in its corporation name."); *cf. Executive Mgmt.*, 38 P.3d at 875 (noting that Nevada has adopted "parts" of the MBCA by statute). *But see* 23 A.L.R. 5th 744 § 8[b] (noting that at least three states have taken the opposite, harsher approach adopted by the bankruptcy court in this case).

[9]We note that Krause argues that, even if the rule established by *Executive Management* applied to domestic corporations, ASRN and SMI cannot benefit from such a rule because they did not "promptly" obtain reinstatement of their corporate charters. Krause would measure prompt-

The bankruptcy court and the district court correctly held that *Executive Management* is not controlling precedent because it construes a different statute, currently found at section 80.055, governing qualification of foreign corporations doing business in Nevada. Nonetheless, that does not make *Executive Management* entirely irrelevant. The district court further distinguished *Executive Management* by explaining that "the court . . . engaged in statutory construction of N.R.S. [section 80.055] [only] because the court found that the plain language of the statute was ambiguous." Unlike the ambiguity in section 80.055, the district court found that section 78.175(2) is "unambiguous." As noted above, however, we disagree with the district court; in our view the term "transact business" in section 78.175(2) *is* ambiguous. Moreover, in *Executive Management*, the Nevada Supreme Court adopted a "more forgiving approach" to interpretation of an ambiguous forfeiture provision, choosing to avoid the "extraordinarily harsh" result of dismissal and providing an opportunity for technical defaults to be cured and cases to be decided on the merits. *See* 38 P.3d at 875-76. In light of the Nevada Supreme Court's approach in *Executive Management*, the court might apply a similar forgiving approach to the ambiguous forfeiture provision at issue in this case. *See id.* at 876 ("[T]he fact that the [Nevada] Secretary of State is willing to reinstate foreign corporations . . . and forgive the fault in every respect . . . [including giving complete retroactive effect to the reinstatement] indicates that failing to qualify is not so egregious that it warrants dismissal with prejudice, what is perhaps a court's most severe civil penalty."); *cf.* Nev. Rev. Stat. § 78.180(5)

---

ness from either the original revocation of the charter or from the filing of the complaint. Under *Executive Management*'s discussion of promptness, however, we would be inclined to hold that promptness is measured from the point where the corporation is *put on notice that its capacity to sue is in issue*, and that ASRN and SMI's reinstatements, coming within one month of Krause's motion to dismiss, were therefore prompt. We, of course, welcome any clarification that the Nevada Supreme Court may wish to provide as to the proper measure of "promptness."

(providing that reinstatement of domestic corporation's revoked charter "reinstates the corporation's right to transact business as if such right had at all times remained in full force and effect").

## D.  Assurance that questions of Nevada law are dispositive

Although the issues in this appeal largely revolve around Nevada law, Krause raises one argument of federal law which, if correct, would moot the state-law inquiry. In a memorandum disposition filed simultaneously with this order, however, we reject that federal-law argument. Therefore, the Nevada Supreme Court's interpretation of Nevada law will be determinative of this appeal.

## III.  Question of law

With the above discussion as a predicate, we certify to the Nevada Supreme Court the following question of law:

> Under Nevada law, may a domestic corporation whose charter has been revoked under Nevada Revised Statutes section 78.175(2) prosecute a lawsuit either (a) in its own corporate name or (b) through its directors? If not, is the defendant entitled to have such a lawsuit dismissed with prejudice, or must the plaintiff corporation first be given a reasonable opportunity to reinstate its charter? *Cf. Executive Mgmt. Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872 (Nev. 2002).

We recognize that the Nevada Supreme Court may rephrase the question as it deems necessary. *Palmer v. Pioneer Inn Assocs. Ltd.*, 59 P.3d 1237, 1238 (Nev. 2002) (rephrasing and answering our certified question).

## IV. Conclusion

It appears to this court that there is no controlling precedent of the Nevada Supreme Court with regard to the determinative issues of Nevada law raised by this case. We therefore respectfully request that the Nevada Supreme Court accept and decide the certified question. We agree that "[t]he written opinion of the [Nevada] Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties." Nev. R. App. P. 5(g).

The clerk of this court shall forward a copy of this order, under official seal, to the Nevada Supreme Court, along with copies of all briefs and excerpts of record that have been filed with this court.

**IT IS SO ORDERED.**

Respectfully submitted, Raymond C. Fisher and Richard A. Paez, Circuit Judges, and James L. Robart, District Judge.

_____

Raymond C. Fisher
United States Circuit Judge, presiding

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson Reuters/West.