**Brian and Brandy CRAWFORD,**
**Plaintiffs,**

v.

**C. RICHARD DOBSON BUILDERS, INC., D.R. Horton, Inc., and American Inspection Service, Inc., Defendants.**

**C.A. No. 2:08–3156–PMD.**

United States District Court, D. South Carolina, Charleston Division.

Jan. 28, 2009.

Patrick J. McDonald, Patrick J. Mc-Donald Law Office, Charleston, SC, for Plaintiffs.

Donald A. Cockrill, William Kyle Dillard, Ogletree Deakins Nash Smoak and Stewart, Greenville, SC, for Defendants.

## *ORDER*

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court on Plaintiffs' Motion to Remand. For the reasons set forth herein, Plaintiffs' Motion is granted.

## *BACKGROUND*

Defendant C. Richard Dobson Builders, Inc. ("Dobson") designed and constructed a residence at 105 Corn Planters Street, in the City of Charleston and Berkeley County. On or about February 14, 1998, Defendant D.R. Horton, Inc. ("Horton") acquired Dobson and became its successor in interest.

The residence in question was previously owned by Jeffrey and Amy Dietrich. In late 2006, Plaintiffs Brian and Brandy Crawford ("Plaintiffs") purchased the residence from the Dietrichs. Before closing on the home purchase, Plaintiffs hired Defendant American Inspection Service ("American") to perform a home inspection to make sure the home did not have any serious defects. American performed the inspection, and determined that the residence did not have any serious defects. Plaintiffs went on to close on the house and become owners of the residence at 105 Corn Planters Street.

In August 2008, Plaintiffs became aware of defects with the house, including but not limited to "deficiencies with exterior cladding of the residence, water intrusion, mold intrusion, and improper roof and window installation." (Pls.' Mot. to Remand at 5.) Plaintiffs assert that these deficiencies have caused potential medical problems for them, and are so severe that they make the home worth much less than they actually paid for it. Thus, Plaintiffs allege that they have been harmed both bodily

and financially as a result of the loss in home equity.

Plaintiffs filed suit in the Berkeley County Court of Common Pleas on August 8, 2008, alleging claims against all named Defendants. Defendants were served with notice of this action on August 18. On September 15, Defendants Dobson and Horton removed the action to this Court. While Defendant American is a citizen of South Carolina, Defendants Dobson and Horton asserted that American was a sham defendant in the action, added for the sole purpose of defeating diversity jurisdiction. On October 14, Plaintiffs filed a Motion to Remand this action back to state court, asserting that American was, in fact, a legitimate defendant in this action, and that therefore complete diversity was lacking. Defendants Dobson and Horton filed a Response in Opposition to Plaintiffs' Motion to Remand on October 29.

### STANDARD OF REVIEW

■ The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994)). The court is obliged to construe removal jurisdiction strictly because of the "significant federalism concerns" implicated. *Id.* Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Dixon*, 369 F.3d at 816.

■ Section 1441 of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In this case, Defendant alleges that removal was proper because the district court had original jurisdiction to hear Plaintiff's case under 28 U.S.C. § 1332. Under that statutory provision, federal district courts have original jurisdiction over a case if the case involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The complete diversity rule of § 1332 requires that the citizenship of each plaintiff be different from the citizenship of each defendant. *See Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir.1999). If, however, the defendant can show that the joining of a non-diverse party is fraudulent, then an action may be removable. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999).

■ "To show fraudulent joinder, the removing party must demonstrate either (1) outright fraud in the plaintiff's pleading of jurisdictional facts or (2) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir.1999) (internal quotation marks omitted). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Id.* The plaintiff need not establish that he will ultimately succeed on his claims; "[t]here need be only a slight possibility of a right to relief." *Id.* at 425. In order to determine whether a pleading is fraudulent, the Court is not bound by the

allegations of the pleadings, but instead it may consider the entire record and may resolve the issue by any means available. *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir.1990).

Plaintiffs assert that this court lacks subject matter jurisdiction because Defendant American, like Plaintiffs, is a citizen of the state of South Carolina. Defendants Dobson and Horton argue that American has been fraudulently joined to this case, and that Plaintiffs cannot recover from American. Defendants claim that Plaintiffs can only possibly recover any damages from Defendants Dobson and Horton, which are both citizens of jurisdictions other than South Carolina.

## ANALYSIS

### I. Plaintiffs' Motion to Remand

 Federal courts are courts of limited jurisdiction, and if there is any doubt as to whether Defendant American is an actual party in interest to this action or not, the matter should be remanded. The Court reemphasizes that the burden is not on Plaintiffs to show a great likelihood of eventual recovery from American, but rather the burden falls to Defendants to show that Plaintiffs have no likelihood whatsoever of recovering from American. *See, e.g., Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir.1993) ("The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor.").

 Defendants assert that Plaintiffs fail to make any specific allegations against American, and that Plaintiffs have failed to sufficiently set out the factual basis for any claims against American in their Complaint.

However, the Complaint states that:

6. Home Inspector held itself out as an expert in the field of Home Inspection, intending that such warranty would be relied upon by the Plaintiffs.

7. Home Inspector undertook a duty to properly inspect the Plaintiffs' residence prior to Plaintiffs purchase thereof.

8. House Inspector did conduct an inspection of the residence on or about July 21, 2005 and subsequently produced an Inspection Report which was relied upon by Plaintiffs prior to the purchase of the subject residence by Plaintiffs.

9. The Plaintiffs did reasonably rely upon said affirmations and warranties as made by Home Inspector and did reasonably rely upon the information provided to them in the Inspection Report generated by this Defendant.

10. Based, in part, on the affirmations and warranties provided by Home Inspector, the Plaintiffs purchased the Subject Residence.

. . .

31. At the time of the contract between Home Inspector and the Plaintiffs, it was foreseeable that in the event the home was defective, it would require the retention of contracting and structural experts to determine not only the extent of damage but also, the method and cost of repair.

32. As a direct and proximate result of Defendant's breach of contract, the Plaintiffs have been subjected to very dangerous and toxic level of "black mold" (and other mold) and are now and presently require and will require in the future, medical treatment. In addition, these Plaintiffs have had to vacate the

Subject Residence until it is repaired and all mold has been ameliorated.

33. As a direct and proximate result of the Home Inspector's conduct as more fully described herein, the Plaintiffs have been damaged in an amount to be determined by this Honorable Court for actual damages, punitive damages, the costs for retention of experts to determine the extent of damage and the scope of work for repair and completion of this project and the costs and disbursements of this action.

(Compl.) The Complaint also contained allegations about the defects in the house and the medical and financial damage those defects had caused Plaintiffs.

The purpose of requiring a certain amount of specificity in pleadings is to put a Defendant on notice so that he or she may adequately prepare a defense. However, it has never been the law that a plaintiff must set forth every allegation in painstaking detail. Indeed, such a requirement would be typically impossible for a plaintiff to do before he or she had an opportunity to conduct discovery. This is particularly true where, as here, the alleged breach or negligence was an act of omission of a very technical manner. It would be simply absurd to require Plaintiffs, as Defendants seem to urge this court to do, to name every technical mistake American made in not uncovering the myriad problems with the home in question. However, Plaintiffs have set out in their Complaint allegations that: (1) they hired American to perform a home inspection; (2) American performed the inspection; (3) American failed to notice and report several defects with the home which Plaintiffs allege a home inspector should have noticed; (4) in reliance upon American's report, Plaintiffs purchased the home in question; and (5) because of the residence's defects, Plaintiffs have suffered severe financial harm and possibly suffered permanent medical harm. These allegations give Defendant American sufficient notice of the nature of the claims against it, and allow it to adequately defend itself against Plaintiffs' claims.

Accordingly, the Court finds that American is not dismissed from this action due to inadequate pleading on the part of Plaintiffs, and will not sustain Defendants' removal for this reason.

■ Defendants next claim is that Plaintiffs cannot possibly recover from Defendant American because Plaintiffs' allegations against Defendant American and their allegations against Defendants Dobson and Horton are mutually exclusive. Specifically, Defendants assert that Plaintiffs could possibly recover against Defendants Dobson and Horton on the theory that the residence's defects were "latent," and thus could not have been discovered by American. In the alternative, Defendants Dobson and Horton assert that Plaintiffs could possibly recover against American on the theory that the defects were "patent," or so obvious that American should have discovered it. However, Defendants claim that Plaintiffs' theory of the case and grounds for relief must be one or the other, but not both.

The primary basis for this assertion seems to be a quoted passage from the Supreme Court of South Carolina, which wrote that "a person who accepts a property with a patent defect waives claims arising out of that defect, and that the law thus only protects the purchaser from defects that a reasonably careful inspection would not reveal." *Fields v. J. Haynes Waters Builders, Inc.,* 376 S.C. 545, 658 S.E.2d 80, 90 (S.C.2008). However, this quote was taken out of context. The portion of *Fields* in question involved whether or not the trial court had erred in giving the jury the quoted jury instruction in

regards to the builder's statute of limitations defense. In that case, the purchaser failed to have the home inspected at all prior to purchasing the residence, and then waited a number of years after the purchase before bringing the claim. The full sentence from which Defendants draw this quote, in fact, reads, *"In this context, the trial court charged the jury that* a person who accepts a property with a patent defect waives claims arising out of that defect, and that the law thus only protects the purchaser from defects that a reasonably careful inspection would not reveal." *Id.* (emphasis added). This was specifically, then, not a holding of the court, but merely a summation of the trial court's jury instruction. While the trial court's instruction was ultimately upheld, the court explicitly said that "[a]ccordingly, we hold that the trial court did not err in charging the jury *regarding the law of acceptance of patent defects." Id.* (emphasis added).

Here, the issue is completely different from the one presented to the court in *Fields.* There is no allegation that Plaintiffs ever "accepted" the patent defects in the house by sitting on their rights, and Plaintiffs did in fact hire a home inspector to try to ensure that there were no defects, patent or otherwise, with the residence. The *Fields* court did not say, and Defendants can produce no other authority in support of this proposition, that a builder is completely immunized from all patent defects with a home. Such a rule, which would essentially say that builders could only be held liable for small, hard to detect problems, but not major structural defects, would be counterintuitive and would manifestly run counter to important public poli-

cy considerations like consumer protection and home safety. Plaintiffs have asserted that there were a number of very important defects with their home, defects that were caused by Defendants Dobson and Horton during the building process, and defects which should have been noted by Defendant American during the inspection process. At this point in the litigation, the Court sees no inconsistency in Plaintiffs bringing claims against all three named Defendants in this action, and these claims are therefore not mutually exclusive.

Accordingly, Defendants have not borne their burden of showing that Plaintiffs cannot possibly recover damages from Defendant American, and therefore Defendant American is not a sham defendant to this action and was not fraudulently joined. Since American is a valid party to this action, and American is, like Plaintiffs, a citizen of South Carolina, there is not complete diversity among the parties in this case and this Court lacks jurisdiction over this matter. Therefore, Plaintiffs' Motion to Remand this case back to the Berkeley County Court of Common Pleas is hereby granted.[1]

## II. Plaintiffs' Request for Hearing

Plaintiffs also requested a hearing before the Court to decide this issue. However, both sides adequately made their arguments before this Court in their pleadings, and the Court had sufficient information to render a decision on whether or not to remand this matter back to the Berkeley County Court of Common Pleas. Accordingly, a hearing was unnecessary, and Plaintiffs' request for a hearing is denied.

---

1. Because this Court holds that there is no complete diversity between Plaintiffs and Defendants, the Court need not and does not address the irrelevant issue of whether or not

Plaintiffs have alleged the necessary amount of more than $75,000 for federal diversity jurisdiction.

## II. Plaintiffs' Request for Attorney Fees

 Finally, Plaintiffs have requested that this Court award them attorney fees due to Defendants' allegedly fraudulent and frivolous removal of this matter to federal court. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Whether or not to award attorney fees under this section is left to the sound discretion of the court. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) ("The word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion.") (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). There is a presumption neither in favor of nor against the awarding of attorney fees under 1447(c). *Martin*, 546 U.S. at 136, 126 S.Ct. 704. "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id.* at 141, 126 S.Ct. 704. *See also In re Lowe*, 102 F.3d 731, 733 (4th Cir.1996) (holding that awarding of attorney fees and costs was appropriate under § 1447(c) where " 'a cursory examination ... would have revealed' a lack of federal jurisdiction.") (citation omitted); *Clipper Air Cargo, Inc. v. Aviation Products Intern., Inc.*, 981 F.Supp. 956, 960 (D.S.C.1997) (holding that awarding of attorney fees and costs is appropriate under § 1447(c) where removal is "frivolous").

While the Court has ultimately concluded that it lacks jurisdiction to hear the case, there is no evidence, and the Court does not believe, that Defendants were acting in bad faith or attempting to harass or delay when they removed this matter. Defendants made several reasonable legal arguments as to why Defendant American was not a legitimate party to this case, and if Defendants believed they had a reasonable opportunity to prevail on such a claim and keep the case in federal court, they must not be punished for attempting to do so. Because the removal was based upon a reasonable legal argument and not so obviously frivolous as to constitute an abuse of the court system, the Court denies Plaintiffs' request for attorney fees.

### CONCLUSION

For the foregoing reasons, the Court **ORDERS** that Plaintiffs' Motion to Remand to the Berkeley County Court of Common Pleas be **GRANTED**. The Court further **ORDERS** that Plaintiffs' Request for a Hearing and Request for Attorney Fees are both **DENIED.**

**AND IT IS SO ORDERED.**