VALLEY BANK OF NEVADA, a Nevada Banking Corporation, and DEAN LANGHAM as Co-Trustees for DEAN LANGHAM, SHEILA MILLS and ANN LANGHAM; PATRICIA LUND and MARY McCARTY, Appellants, v. EDWARD GINSBURG and WILLIAM PATTERSON CASHILL, Successor Co-Trustees of the Revocable Intervivos Trust of Jeanette Ginsburg; WILLIAM PATTERSON CASHILL and TERRY CLARKE JUHOLA, Co-Trustees and Trustees and Beneficiaries of the Trust Created Under the Last Will and Testament of William J. Cashill; RENO PROPERTIES CORP., a Nevada Corporation; SOLARI-NASH ENTERPRISES, a Nevada Corporation; SOLARI-BILTZ, a Nevada Partnership; NORMAN H. B. NASH, E. W. NASH; JOHN NASH and ALBERT B. SOLARI, Respondents.

No. 23487

May 19, 1994

874 P.2d 729

*Jones, Jones, Close & Brown* and *David L. Mousel,* Reno, for Appellants.

*Vargas & Bartlett,* Reno, for Respondents Edward Ginsburg, William Patterson Cashill, and Terry Clarke Juhola.

*Robison, Belaustegui, Robb & Sharp,* Reno, for Respondents Reno Properties, Solari-Nash Enterprises, Solari-Biltz, Norman H.B. Nash, E.W. Nash, John Nash and Albert B. Solari.

## OPINION

*Per Curiam:*

This is an appeal from an order of the district court approving a proposed settlement in a shareholders' derivative action. Respondents have filed motions to dismiss this appeal. Appellants oppose the motions. We hold that the order appealed from is not substantively appealable. We further hold that appellants—a group of minority corporate shareholders who were not parties to the action below—have no standing to pursue this appeal. Accordingly, we grant the motions to dismiss.

### FACTS

In January 1991, Jeanette Ginsburg, a minority shareholder of respondent Reno Properties Corporation (RPC), filed a shareholders' derivative lawsuit against RPC, its officers and directors. *See* NRCP 23.1. During the pendency of this lawsuit, Ms. Ginsburg died and the trustees and beneficiaries of her estate were substituted in as plaintiffs.[1] *See* NRCP 25(a).

The trustees alleged that RPC's officers and directors supposedly caused the corporation to engage in transactions that personally benefitted the individual officers and directors, but worked to the detriment of RPC as a whole. Thus, the trustees sought (1) an accounting of the profits the individual officers and directors gained from these supposed transactions, and (2) recovery of all damages proximately caused by the alleged waste of corporate assets.

---

[1]Throughout this opinion, we will refer to the plaintiffs in the action below collectively as the "trustees."

On November 14, 1991, the parties reached a compromise of their dispute during a district court settlement conference. Under the terms of the parties' proposed agreement, RPC will purchase all of the trustees' RPC stock for $305,000.00. In exchange, the trustees will dismiss the lawsuit with prejudice as to *all* RPC shareholders, including all non-party shareholders.

As required by NRCP 23.1, the parties sent notices about the terms of their proposed settlement to all RPC shareholders. These notices advised that "once this lawsuit is settled and the settlement is approved by the court, another shareholder in [RPC] may not bring a lawsuit alleging similar allegations and seeking similar relief." In addition, the non-party shareholders were told that if they wished to object to the settlement, they should appear at a district court hearing to be held on April 28, 1992.

A group representing seven percent of RPC's shareholders—consisting of appellants Valley Bank of Nevada, Dean Langham (co-trustees for Dean Langham, Sheila Mills and Ann Langham), Patricia Lund and Mary McCarty—appeared at the April 1992 hearing to contest the proposed settlement, and subsequently filed written objections. However, these shareholders did not seek leave to intervene. *See* NRCP 24(a). On June 29, 1992, the district court entered an order approving the settlement proposal. This appeal followed.

On August 12, 1992, respondents (plaintiffs and defendants below) filed a joint motion to dismiss the appeal. In their motion to dismiss, respondents assert that because appellants were never parties to the trial court action, they have no standing to appeal. *See* NRAP 3A(a). Appellants filed an opposition, respondents filed a reply, and the motion to dismiss was submitted for disposition.

On March 2, 1993, however, the trustees asked this court to stay consideration of both the motion to dismiss and the entire appeal, so that the case could be remanded to the district court. According to their motion, the trustees were in danger of suffering irreparable harm because even though they had already dismissed the underlying lawsuit, RPC had withheld the settlement proceeds and thus remained free to exhaust its assets prior to disposition of the appeal. To prevent this from occurring, the trustees urged this court to "stay the appeal and have the case remanded back to the trial court so that the trial court may institute a legal means to preserve the status quo until the case is resolved." In other words, the trustees sought a remand so that the district court could order someone—either appellants or RPC—to post an appeal bond. *See* NRAP 8(a).

The trustees' motion for a stay and remand generated a flurry of opposition and counter-motions. Ultimately, the trustees

acknowledged that the district court has never entered an order dismissing the underlying lawsuit. Consequently, the trustees filed a second motion to dismiss this appeal, in which they argue that this court does not have jurisdiction over the appeal because no final, appealable order was ever entered below. Appellants also oppose this second motion to dismiss.

## DISCUSSION

The pending motions present two issues for our resolution. First, the trustees contend that the district court's order approving the parties' proposed settlement is not substantively appealable. *See* NRAP 3A(b)(1). Second, respondents collectively contend that non-party shareholders who have been given notice of a settlement, who have been invited to comment on the settlement, and who have formally submitted written opposition, have no standing to appeal. *See* NRAP 3A(a). We consider each question in turn.

*Substantive appealability*

This is a court of limited appellate jurisdiction. Specifically, this court has jurisdiction to entertain an appeal only where an appeal is authorized by statute or court rule. *See, e.g.,* Castillo v. State, 106 Nev. 349, 352, 792 P.2d 1133, 1135 (1990) (no appeal lies from an order certifying a juvenile to stand trial as an adult); Taylor Constr. Co. v. Hilton Hotels, 100 Nev. 207, 209, 678 P.2d 1152, 1153 (1984) (no appeal from an order denying summary judgment); Kokkos v. Tsalikis, 91 Nev. 24, 25, 530 P.2d 756, 756-57 (1975) (no appeal from an order setting aside a default). We are aware of no statute or court rule that authorizes an appeal from a district court order approving a proposed settlement, and the parties have cited none. Appellants nevertheless contend that the district court's order approving the settlement is appealable because it constitutes a "final judgment" within the meaning of NRAP 3A(b)(1).

Preliminarily, we must agree with appellants that it makes no difference to our analysis whether the district court's "order approving settlement proposal" was specifically labeled as a "final judgment." This court has consistently looked past labels in interpreting NRAP 3A(b)(1), and has instead taken a functional view of finality, which seeks to further the rule's main objective: promoting judicial economy by avoiding the specter of piecemeal appellate review. *See* State, Taxicab Authority v.

Greenspun, 109 Nev. 1022, 1025, 862 P.2d 423, 425 (1993); Hallicrafters Co. v. Moore, 102 Nev. 526, 528-29, 728 P.2d 441, 443 (1986); *see also* Van Cauwenberghe v. Biard, 486 U.S. 517, 521-22 n.3 (1988).

This court determines the finality of an order or judgment by looking to what the order or judgment actually *does,* not what it is called. Taylor v. Barringer, 75 Nev. 409, 344 P.2d 676 (1959). More precisely, a final, appealable judgment is "one that disposes of the issues presented in the case . . . and leaves nothing for the future consideration of the court." Alper v. Posin, 77 Nev. 328, 330, 363 P.2d 502, 503 (1961); *accord* O'Neill v. Dunn, 83 Nev. 228, 230, 427 P.2d 647, 648 (1967).

Appellants contend that the district court's order meets this standard because after the order was issued, the parties could have dismissed this lawsuit by stipulation, which would have left nothing for the future consideration of the trial court. *See* NRCP 41(a)(1); Jeep Corp. v. District Court, 98 Nev. 440, 443-44, 652 P.2d 1183, 1185-86 (1982). This argument, however, fails to account for NRAP 4(a)(3), which specifies:

> [a] notice or stipulation of dismissal filed pursuant to N.R.C.P. 41(a)(1) has the same effect as a judgment or order signed by the judge and filed by the clerk and constitutes entry of a judgment or order for the purposes of this Rule. If such a notice or stipulation dismisses all unresolved claims pending in an action in the district court, the notice or stipulation constitutes entry of a final judgment or order for the purposes of this Rule.

In other words, our procedural rules specifically account for cases that are resolved by a stipulation to dismiss, and expressly provide that the stipulation to dismiss constitutes the final judgment.

Because any dismissal order—even if the result of a stipulation—would unquestionably have constituted a final judgment, we decline to construe a pre-dismissal order approving a proposed settlement as a "final judgment." To do so would create the potential that two "final judgments" might exist in this case— the order approving the settlement and the stipulation to dismiss. Indeed, appellants' position applied to its logical conclusion would mean that nearly every ruling in every case can be labeled as a "final judgment," because every ruling *might* be followed by a stipulated dismissal. *See Jeep Corp.,* 98 Nev. at 443, 652 P.2d at 1185-86.

The order appealed from here is not the district court's final judgment in this case. A substantial possibility remains that, for whatever reason, the parties might refuse to stipulate to dismissal.[2] Indeed, to date, the parties have not stipulated to dismissal of the action below. Until a stipulation to dismiss this action is signed and filed in the trial court, or until this entire case is resolved by some other final, dispositive ruling, matters potentially remain for the district court's consideration. The order approving the settlement proposal accordingly does not constitute a "final judgment" within the meaning of NRAP 3A(b)(1), and is substantively unappealable.

*Standing to appeal*

Even assuming that the order approving the proposed settlement is substantively appealable, this court has jurisdiction to entertain an appeal only where the appeal is brought by an aggrieved *party*. NRAP 3A(a) limits the right of appeal to "part[ies] aggrieved" by a district court's decision.

There is no question that appellants are "aggrieved" by the district court's order. A party is "aggrieved" within the meaning of NRAP 3A(a) "when either a personal right or right of property is adversely and substantially affected" by a district court's ruling. Estate of Hughes v. First Nat'l Bank, 96 Nev. 178, 180, 605 P.2d 1149, 1150 (1980). The district court's decision to approve the settlement over appellants' objection "substantially and adversely affected" their interests by purporting to terminate whatever rights they may have had to bring future lawsuits against RPC arising out of the same transactions. Appellants were thus "aggrieved" by the district court's order. Therefore, we need only determine whether appellants were in fact "parties" to the underlying litigation.

This court has consistently taken a restrictive view of those persons or entities that have standing to appeal as parties. For example, in Garaventa Co. v. Dist. Court, 61 Nev. 350, 354, 128 P.2d 266, 267-68 (1942), this court held that although the petitioner corporation was greatly affected by the trial court's order,

---

[2]There are a number of different reasons why the parties might refuse to stipulate to dismissal. For example, appellants might seek to intervene in the action and, if successful, might refuse to sign any stipulation to dismiss the case. In such a situation, dismissal would have been obtained only by noticed motion, which would require another ruling from the district court.

it nevertheless did not have standing to appeal because it was never named as a party to the lawsuit. Our decision in *Garaventa* declined to follow a line of California cases that would have allowed an appeal, and instead set forth this more narrow rule that "'aggrieved party' means parties who are named as such in the record and who, as such, are served with process or enter an appearance." *Garaventa,* 61 Nev. at 354, 128 P.2d at 267-68; *see also* Rae v. All American Life & Cas. Co., 95 Nev. 920, 922, 605 P.2d 196, 197 (1979).

More recently, in Aetna Life & Casualty v. Rowan, 107 Nev. 362, 363, 812 P.2d 350, 350-51 (1991), we held that an insurance company whose interests were substantially affected by a district court order denying intervention could not appeal because the company had never become a party to the lawsuit. Just as in *Garaventa,* we rejected a line of cases from other jurisdictions that would have allowed an appeal, and we reaffirmed our traditional reluctance to afford appeal rights to those not named as parties in the trial court action. *Rowan,* 107 Nev. at 363, 812 P.2d at 350-51.

Similarly, in Gladys Baker Olsen Fam. Trust v. Olsen, 109 Nev. 838, 841-42, 858 P.2d 385, 386-87 (1993), we held that a family trust had no right to appeal from an order that "substantially and adversely" affected it, because the trust had not been made a party to the action until after the order had issued. Once again, we rejected a line of out-of-state cases that permitted nonparties to appeal under similar circumstances, and we emphasized that "it has been the consistent policy of this court to foster simplicity, clarity and certainty in our jurisdictional rules by refraining from ad hoc dispensations and exceptions" that would allow persons or entities that were not parties of record to appeal. *Id.* at 841, 858 P.2d at 387.[3]

Our cases would therefore seem to preclude this appeal because, although appellants were notified of this action and appeared before the district court, they never became parties of record. Indeed, appellants essentially concede this defect, but invite us to overlook it in favor of certain out-of-state authorities, which seem to authorize appeals by non-parties from orders approving the settlement of a shareholders' derivative action. *E.g.,* Cohen v. Young, 127 F.2d 721, 724 (6th Cir. 1942); Webcor Electronics v. Whiting, 101 F.R.D. 461, 465 n.11 (D.

---

[3]*Accord* Beury v. State, 107 Nev. 363, 812 P.2d 774 (1991) (attorney who was not party of record could not appeal from district court's order denying excess fees); Albany v. Arcata Associates, 106 Nev. 688, 799 P.2d 566 (1990) (attorney who was not a party to district court action had no right to appeal sanctions order).

Del. 1984); Saylor v. Bastedo, 78 F.R.D. 150, 152-53 (S.D.N.Y. 1978).[4]

We decline the invitation. Just as in *Garaventa, Rowan* and *Olsen,* principles of "simplicity, clarity and certainty" compel us to adhere to our traditionally narrow definition of the term "party." As this court has often stated, our jurisdictional rules must be "clear and absolute in order to give all fair notice of what is required to bring a matter properly before this court." Rust v. Clark Cty. School District, 103 Nev. 686, 688, 747 P.2d 1380, 1382 (1987). Accordingly, we conclude that, in Nevada, a person or entity is not a party within the meaning of NRAP 3A(a) unless that person or entity has been served with process, appeared in the court below *and* has been named as a party of record in the trial court. *See Garaventa,* 61 Nev. at 354, 128 P.2d at 267-68.

Appellants cannot meet this standard. They never intervened and thus never became parties of record in the trial court. Accordingly, we hold that appellants are not parties within the meaning of NRAP 3A(a), and that as such, they have no standing to appeal from the district court's order.

## CONCLUSION

Because this court lacks jurisdiction to entertain this appeal, we grant the motions to dismiss and dismiss this appeal without prejudice to appellants' right to pursue alternative forms of relief.[5]

---

[4]A recent United States Supreme Court decision, Marino v. Ortiz, 484 U.S. 301 (1988), casts considerable doubt on the federal cases relied on by appellants. In *Marino,* the Court held that because a group of police officers affected by a consent decree "were not parties to the underlying lawsuit, and . . . failed to intervene for purposes of appeal, they may not appeal from the consent decree approving the lawsuit's settlement." *Id.* at 304. To support its decision, the Court observed that "[t]he rule that only parties to a lawsuit, or those that properly become parties, also may appeal an adverse judgment, is well settled." *Id.; see also* Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1307-08 (3d Cir. 1993) (noting considerable confusion in this area).

[5]We deny as moot plaintiffs' "motion to stay appeal and remand case to district court."