**130 Nev., Advance Opinion 25**
IN THE SUPREME COURT OF THE STATE OF NEVADA

RANDALL GEORGE ANGEL,
Appellant,
vs.
MICHAEL CRUSE,
Respondent.

No. 59278

**FILED**

APR 03 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Proper person appeal from a district court summary judgment in a civil rights action. First Judicial District Court, Carson City; James Todd Russell, Judge.

*Reversed and remanded.*

Randall George Angel, Reno,
in Proper Person.

Catherine Cortez Masto, Attorney General, and Clark G. Leslie, Senior Deputy Attorney General, Carson City,
for Respondent.

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, CHERRY, J.:

In this appeal, we consider whether the district court erred by granting summary judgment to respondent in a civil rights action alleging retaliation in response to appellant's exercise of his rights under the First Amendment to the United States Constitution. Because we conclude that genuine issues of material fact existed with regard to several elements of the retaliation claim, we reverse the summary judgment and remand this

14-10522

matter to the district court for further proceedings consistent with this opinion.

## BACKGROUND

In the district court, proper person appellant Randall George Angel, then an inmate, filed a civil rights complaint against respondent corrections officer Michael Cruse, in his individual capacity only. In the complaint, Angel alleged that Cruse had violated his civil rights by filing a disciplinary charge against him and having him placed in administrative segregation in retaliation for Angel attempting to file a grievance against Cruse. Specifically, Angel asserted that he was filling out a grievance form when Cruse asked him what he was doing. Angel maintains that his response was, "you violated my constitutional right and I'm going to make you pay for it." Cruse then stopped Angel from completing the grievance, handcuffed him, and escorted him to a senior officer's office. According to Angel, he was then placed in administrative segregation and charged with threatening Cruse. The charge was upheld following a disciplinary hearing.

Cruse subsequently filed a motion for summary judgment on Angel's complaint in which he largely did not dispute the sequence of events set forth by Angel. But he asserted that, rather than saying "you violated my constitutional rights and I'm going to make you pay for it," Angel had actually threatened him by saying, "I'll get you, believe me you're going to get yours." Cruse argued that the adverse action taken against Angel following this exchange was carried out in response to this threat and not because Angel was attempting to file a grievance against him. Thus, Cruse contended that the adverse action was taken for a nonretaliatory purpose and that it advanced the legitimate correctional

goal of institutional security. Cruse further argued that the adverse action had not chilled Angel's exercise of his First Amendment rights, as demonstrated by the fact that Angel had continued to file grievances related to this and other unrelated incidents. Alternatively, Cruse asserted that he was entitled to qualified immunity because he could not have known that the adverse action violated Angel's constitutional rights.

Angel opposed the summary judgment motion, again asserting that Cruse had prevented him from completing the grievance and falsely charged him with making threats in retaliation for his attempt to file the grievance. Angel disputed Cruse's contentions regarding his reason for taking action against Angel, the action's chilling effects, and Cruse's entitlement to qualified immunity. In support of his opposition, Angel submitted an affidavit detailing his version of the events leading up to the adverse action, including his assertion that what he had said to Cruse was, "you violated my constitutional right and I'm going to make you pay for it." He further attested that this statement was not a threat and that Cruse had falsely charged him with issuing a threat in retaliation for attempting to file the grievance. Cruse filed a reply to Angel's opposition, reiterating his arguments in support of summary judgment.

The district court subsequently granted summary judgment to Cruse,[1] finding that the evidence demonstrated that Angel was handcuffed, placed in administrative segregation, and charged with

_____

[1]The district court also dismissed any claims against Cruse in his official capacity. As the complaint only named Cruse in his individual capacity, this dismissal was unnecessary, and is therefore not addressed further in this opinion.

issuing threats because he had actually threatened Cruse by saying, "I'll get you, believe me you're going to get yours." The court also found that, even if Cruse took this action because of Angel's attempt to file the grievance, Angel could not demonstrate that it had a chilling effect when he had continued to file grievances related to this and other incidents. The district court further concluded that, regardless of the first two findings, the undisputed evidence established that Cruse took action against Angel for the legitimate penological purpose of ensuring institutional security. Thus, the court concluded that Cruse was entitled to judgment as a matter of law with regard to the retaliation claim. Alternatively, the court found that Cruse was entitled to qualified immunity because, "[e]ven assuming for the sake of argument that a violation occurred, as a matter of law, Defendant Cruse could not have reasonably known that the actions he took, pursuant to administrative regulations, as a result of [Angel] threatening him violated established statutory or constitutional rights." This appeal followed.[2]

---

[2]On appeal, Angel argues that this court lacks jurisdiction over his appeal because his claims against corrections officer Patrick McNamara were not resolved, and thus, a final judgment was not entered below. But the district court record demonstrates that McNamara was never made a party in district court because he was not served with process. *See Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 448, 874 P.2d 729, 735 (1994) (explaining that a person who is not served with process and does not make an appearance in the district court is not a party to that action). As a result, the judgment in this matter was final and appealable, and we therefore have jurisdiction to consider this appeal. *See* NRAP 3A(b)(1) (providing for an appeal from a final judgment).

# DISCUSSION

## Standard of review

This court reviews a district court summary judgment de novo, without deference to the district court's findings. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment was appropriate in this case if the pleadings and other evidence presented, viewed in the light most favorable to Angel, demonstrated that Cruse was entitled to judgment as a matter of law and that no genuine issues of fact remained in dispute. *Id.*

## Retaliation

On appeal, Angel argues that there were genuine issues of fact remaining that precluded summary judgment on his retaliation claim.[3] Cruse, on the other hand, asserts that the undisputed evidence demonstrated that he took action against Angel in response to a threat and not in retaliation for Angel's attempt to file a grievance against him. Cruse further contends that the action taken against Angel did not chill Angel's exercise of his First Amendment rights and that it was taken to advance the legitimate correctional goal of prison safety.[4]

---

[3]Both in the district court and in this court, Angel sometimes discussed his claim in terms of a denial-of-access-to-the-courts issue. Although Angel's complaint alleged that Cruse stopped him from filing his grievance at the time that he intended to file it, he did not assert that he was unable to file the grievance at a later time, and thus, he did not state a claim for denial of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 349-55 (1996) (holding that a prisoner seeking to state a denial-of-access-to-the-courts claim must demonstrate actual injury by showing that he or she was hindered in attempting to pursue a legal claim). Thus, we limit our discussion in this opinion to Angel's retaliation claim.

[4]In his initial response, Cruse asked this court to apply the "some evidence" standard discussed in *Superintendent, Massachusetts*

*continued on next page...*

 

A prisoner alleging retaliation for the exercise of his or her First Amendment rights must demonstrate that (1) the prisoner engaged in protected conduct, (2) a state actor took adverse action against the prisoner, (3) the adverse action was taken because of the prisoner's protected conduct, (4) the adverse action had a chilling effect on the prisoner's protected conduct, and (5) the adverse action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2004). Cruse does not dispute that Angel engaged in protected conduct or that he took adverse action against Angel. Instead, he contends that the adverse action was not taken because of the protected conduct, Angel's exercise of his First Amendment rights was not chilled, and the adverse action advanced a legitimate correctional goal. As the considerations underlying whether Cruse took action against Angel because of Angel's exercise of protected conduct and whether that action advanced a legitimate correctional goal are related, we discuss those issues first before turning to whether the action had a chilling effect.

---

...*continued*
*Correctional Institution at Walpole v. Hill*, 472 U.S. 445, 455 (1985) (holding that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits"), to uphold the district court's grant of summary judgment with regard to the decision to find Angel guilty after a disciplinary hearing. Angel's claims with regard to the disciplinary hearing, however, applied to McNamara, who, as noted above, was never made a proper party to the district court's action and is thus not a party to this appeal. Because the "some evidence" standard does not apply to a corrections officer's initial accusation that a prisoner violated a rule when the prisoner argues that the accusation was false and retaliatory, *Hines v. Gomez*, 108 F.3d 265, 268-69 (9th Cir. 1997), we do not apply it here.

*Whether the action was taken because of Angel's protected conduct*

Cruse argues that Angel failed to submit any evidence creating a genuine issue of fact as to whether Cruse took action against Angel in response to Angel's filing of the grievance, as opposed to his threatening of Cruse. "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotation marks omitted). To survive summary judgment on this element of a retaliation claim, a prisoner only has to submit evidence of a retaliatory motive sufficient to create a factual issue in this regard. *Id.* While the timing of a punishment alone is not sufficient to establish motivation, it may be circumstantial evidence of motivation. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Initially, contrary to Cruse's contention that Angel failed to submit any evidence in support of his opposition to summary judgment, Angel did submit his own affidavit, sworn under the penalty of perjury, to support his opposition. In that affidavit, Angel asserted that, in response to Cruse asking why he was filling out the grievance, Angel had stated, "you violated my constitutional right and I'm going to make you pay for it." He further attested that this was not a threat and that Cruse had falsely charged him with issuing a threat in retaliation for attempting to file the grievance. Despite the submission of this evidence by Angel, the district court accepted Cruse's version of events, finding that Angel had threatened Cruse by saying, "I'll get you, believe me you're going to get yours." In so doing, the district court failed to properly apply the well-established standard for evaluating summary judgment motions, which required it to construe the evidence in Angel's favor. *See Wood*, 121 Nev.

at 732, 121 P.3d at 1031. Instead, by accepting Cruse's characterization of Angel's statement, the court construed the evidence against Angel.

Accepting Angel's version of the events, Angel said, in response to Cruse asking him why he was filling out a grievance, that Cruse had violated his rights and would have to pay for that violation. While Angel's statement that he would make Cruse pay for violating his constitutional rights was literally a threat insofar as Angel communicated an intent to inflict loss on Cruse, *see Black's Law Dictionary* 1618 (9th ed. 2009) (defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property, esp[ecially] one that might diminish a person's freedom to act voluntarily or with lawful consent"), viewing the circumstances in the light most favorable to Angel, a reasonable person could conclude that Cruse's actions were actually a response to Angel's stated intent to file the grievance against Cruse, rather than a response to a purported security threat. In particular, Angel's version of the statement arguably only communicated to Cruse that Angel intended to pursue the grievance, a protected activity, and did not imply any intent to engage in acts of violence or other improper activity on Angel's part. Moreover, Cruse's adverse action took place while Angel was actually in the process of filling out the grievance. *See Bruce*, 351 F.3d at 1288 (recognizing that the timing of a punishment may provide circumstantial evidence of a retaliatory motive). Construing this set of facts in Angel's favor, we conclude that the evidence was sufficient to raise a genuine issue of material fact with regard to whether the adverse action was taken against Angel because of his exercise of protected conduct.

*Whether the action advanced a legitimate correctional goal*

With regard to whether the action taken against Angel advanced a legitimate correctional goal, to the extent that Cruse actually

handcuffed and removed Angel because Angel made a threat, such an action could, at least arguably, be seen as promoting prison safety, which is a legitimate concern for a correctional facility. *See Turner v. Safley*, 482 U.S. 78, 91 (1987) (recognizing prison security as a legitimate concern for a correctional institution). But if a factual inquiry revealed that Angel's statement was no more than a communication that Angel intended to seek legal relief through the grievance process and that Cruse took the adverse action because Angel was exercising his right to file a grievance, then it would follow that the action was not taken out of a concern for prison safety. *See Rhodes*, 408 F.3d at 567-68 (explaining that a retaliation claim may be valid when the adverse action "did not reasonably advance a legitimate correctional goal"). Thus, for the same reason that a genuine issue of material fact remains with regard to Cruse's motivation, a factual issue also remains as to whether the action taken by Cruse served a legitimate correctional goal.

*Chilling effect*

As for the requirement that the adverse action have a chilling effect, Cruse contends that the undisputed evidence demonstrated that Angel's exercise of his First Amendment rights was not chilled because he continued to file grievances related to this and other incidents. While a prisoner stating a First Amendment retaliation claim must show that the adverse action "chilled the inmate's exercise of his First Amendment rights," in *Rhodes*, the United States Court of Appeals for the Ninth Circuit discussed the difficulties an inmate faces in establishing this element if a subjective standard is used to evaluate it, *i.e.*, if the court considers whether the inmate himself or herself has actually been deterred from engaging in protected conduct by the adverse action. 408 F.3d at 567-69. In *Rhodes*, the lower court had dismissed the inmate's

SUPREME COURT
OF
NEVADA

(O) 1947A

9

retaliation claim based on its conclusion that his filing of the lawsuit demonstrated that the inmate's exercise of his First Amendment rights had not been chilled. *Id.* at 566. But on appeal, the *Rhodes* court held that "[b]ecause it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, [an inmate plaintiff] does not have to demonstrate that his speech was actually inhibited or suppressed." *Id.* (internal quotation marks omitted). Instead, the proper question was whether the adverse action "would chill or silence *a person of ordinary firmness* from future First Amendment activities." *Id.* at 568 (emphasis added) (internal quotation marks omitted); *see also Brodheim*, 584 F.3d at 1271 (applying this objective standard to a prisoner's First Amendment retaliation claim).

Here, the district court applied a subjective standard, concluding that because Angel had continued to use the grievance process, he could not show that Cruse's actions had a chilling effect on his exercise of his First Amendment rights. But under *Rhodes*, the district court should have applied an objective standard, asking whether Cruse's actions would have had a chilling effect on "a person of ordinary firmness." *See Rhodes*, 408 F.3d at 568. And because Cruse did not make any arguments or present any evidence to demonstrate that Angel could not meet this objective standard, the grant of summary judgment on this element of Angel's claim was improper. *See id.* at 569.

As there were genuine issues of material fact remaining with regard to each of the disputed elements of Angel's retaliation claim, the district court erred by concluding that Cruse was entitled to summary judgment on this claim. *See Wood*, 121 Nev. at 729, 121 P.3d at 1029.

Nevertheless, if the district court correctly determined that Cruse was entitled to qualified immunity, we may affirm the court's decision on that basis. Thus, we now consider whether Cruse was entitled to qualified immunity.

*Qualified immunity*

In concluding that Cruse was entitled to qualified immunity, the district court found that "[e]ven assuming for the sake of argument that a violation occurred, as a matter of law, Defendant Cruse could not have reasonably known that the actions he took, pursuant to administrative regulations, as a result of [Angel] threatening him violated established statutory or constitutional rights." But this conclusion assumes that Cruse took the actions because of the purported threat, and not in retaliation for Angel's attempt to file the grievance. And as discussed above, a genuine issue of fact exists with regard to the motivation behind Cruse's actions.

To the extent that Cruse may have taken action against Angel in retaliation for filing the grievance, the Ninth Circuit has recognized "that the prohibition against retaliatory punishment is clearly established law . . . for qualified immunity purposes." *Rhodes*, 408 F.3d at 569 (internal quotation marks omitted). Thus, if it is determined that Cruse took action against Angel in retaliation for Angel's exercise of his First Amendment right to file a grievance, such action was in violation of clearly established law, and Cruse was not entitled to qualified immunity. *See id.* We therefore conclude that granting summary judgment to Cruse on qualified immunity grounds was inappropriate. *See id.*

## CONCLUSION

As detailed above, there were genuine issues of material fact remaining with regard to each of the disputed elements of the retaliation

claim and with regard to Cruse's entitlement to qualified immunity. Accordingly, we reverse the district court's order granting summary judgment to Cruse and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A