131 Nev., Advance Opinion 59

# IN THE SUPREME COURT OF THE STATE OF NEVADA

BARBARA ANN HOLLIER TRUST;
BARBARA ANN HOLLIER LAWSON
A/K/A BARBARA ANNE LAWSON AND
BARBARA ANNE HOLLIER,
INDIVIDUALLY AND AS A TRUSTEE
OF THE BARBARA ANN HOLLIER
TRUST; AND ACADIAN REALTY, INC.,
A NEVADA CORPORATION,
Appellants,
vs.
WILLIAM E. SHACK, JR.; AND
NICOLLE JONES PARKER A/K/A
NICOLLE SHACK PARKER,
Respondents.

No. 63308

**FILED**

AUG 06 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

BARBARA ANN HOLLIER TRUST;
BARBARA ANN HOLLIER LAWSON
A/K/A BARBARA ANNE LAWSON AND
BARBARA ANNE HOLLIER,
INDIVIDUALLY AND AS TRUSTEE OF
THE BARBARA ANN HOLLIER
TRUST; AND ACADIAN REALTY, INC.,
A NEVADA CORPORATION,
Appellants,
vs.
WILLIAM E. SHACK, JR.; AND
NICOLLE JONES PARKER A/K/A
NICOLLE SHACK PARKER,
Respondents.

No. 64047

Consolidated appeals from a district court judgment on a jury verdict and post-judgment orders awarding attorney fees and costs and denying a motion for a new trial in a property action. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-23673

*Affirmed in part and reversed in part.*

Law Office of Andrew M. Leavitt and Andrew M. Leavitt and Robert F. Purdy, Las Vegas,
for Appellants.

Gentile, Cristalli, Miller, Armeni & Savarese, PLLC, and Dominic P. Gentile, Las Vegas; Gordon Silver and Joel Z. Schwarz, Las Vegas,
for Respondents.

BEFORE SAITTA, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, GIBBONS, J.:

In this case, appellants appeal from the denial of a variety of motions and an award of costs and attorney fees to respondents. This appeal raises one issue of first impression: whether the filing of a post-judgment motion that tolls the time to appeal also tolls NRCP 54(d)(2)(B)'s 20-day deadline to move for attorney fees. We hold that it does. Further, we affirm the district court on all accounts except two. We conclude that the district court erred in finding: (1) that the $100,000 offset in appellants' favor from the first trial was extinguished by this court's previous order of reversal and remand; and (2) that all three appellants, instead of just Acadian Realty, Inc., are liable for attorney fees. Accordingly, we reverse on these two issues.

*FACTS AND PROCEDURAL HISTORY*

Nicolle Shack-Parker and her father, William E. Shack (the Shacks), doing business as Kids Care Club, entered into a "Lease Option Agreement and Contract of Sale" (the lease) with Acadian Realty, Inc.

Under the terms of the lease, the Shacks rented a commercial property in Las Vegas (the property) for three years. Upon execution of the lease, the Shacks owed $100,000 for a security deposit and $100,000 in option money. The nonrefundable $100,000 in option money acted as consideration for Acadian Realty not selling the property during the three-year lease and could be applied against the purchase price later if the Shacks chose to purchase the property.

Nicolle leased the property with the intent of opening and operating a child daycare facility, but the property needed extensive work prior to opening. During the reconstruction, the Shacks encountered numerous problems, which included asbestos, electrical wiring not being up to code, and the property not being connected to the Las Vegas valley water line. During this process, tensions between the parties rose and reached a breaking point when, according to the Shacks, Barbara Lawson, the owner of Acadian Realty, refused to sign documents required by the City of Las Vegas in order for construction to be completed.

*The first trial*

The Shacks filed a complaint against Acadian Realty, the Barbara Ann Hollier Trust (the actual owner of the property), and Barbara Lawson, both individually and as the trustee of the trust (collectively referred to as Lawson). In June 2008, the parties proceeded to trial on the Shacks' claims for breach of contract and breach of the implied covenant of good faith and fair dealing and Lawson's counterclaims for breach of contract, intentional misrepresentation, and abuse of process.

Following the conclusion of the trial, but before the jury rendered a verdict, the district court dismissed Lawson's abuse of process claim. The jury, however, already had the verdict form, which included a

SUPREME COURT
OF
NEVADA

(O) 1947A

3

line for damages related to the abuse of process claim. Nevertheless, the trial judge stated that "if the jury comes back with an award on abuse of process, it will just be stricken."

The jury awarded the Shacks damages for their breach of contract claim and their breach of the implied covenant of good faith and fair dealing claim. As to the counterclaims, the jury rejected Lawson's breach of contract and intentional misrepresentation claims, but found the Shacks liable for $105,000 for abuse of process. The jury wrote in by hand that $100,000 of the $105,000 award was for the option money supposedly held in an escrow account and the remaining $5,000 was for attorney fees.

During a post-trial hearing regarding the fact that the jury wrongly awarded attorney fees and the abuse of process claim had been dismissed as a matter of law, the district court stated:

> At any rate, here's what I'm going to do. The case is a mess. I mean truly, the case is a mess. How it got that way the Lord only knows, but it's been a series of one-step decisions at a time . . . . I'm going to order that Mrs. Lawson gets the $100,000 which was required as the second payment for the option money. She complied with her option agreement in that she never listed the property and it was never sold during the term of the lease, so I'm saying just exactly what Mr. Shack said. The money's in an account; she can pick it up anytime she wants to. So I'm going to enforce what he told us in sworn testimony, so the $100,000 that's been sitting in some title company or some escrow account somewhere in California gets paid to Mrs. Lawson.

Additionally, the district court affirmed the damages awarded to the Shacks and clarified that the $100,000 going to Lawson would be treated as an offset. Both parties appealed the final judgment along with other orders.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

*The first appeal*

On appeal, this court entered an order of reversal and remand. *Shack v. Barbara Ann Hollier Trust*, Docket No. 53039 (Order of Reversal and Remand, March 9, 2011). The order reached two conclusions: (1) the jury damages award amounts were not supported by the evidence, and (2) the district court cannot accept a verdict with interlineations on the verdict form. *Id.* As to the first conclusion, this court reasoned that it could not determine how the jury arrived at the damages figure because there was no indication as to what comprised the jury's award. *Id.* Later, this court denied a petition for rehearing but clarified that "this matter is remanded for a new trial solely on the issue of [the Shacks'] damages claims." *Shack v. Barbara Ann Hollier Trust*, Docket No. 53039 (Order Denying Rehearing but Clarifying Order of Reversal and Remand, May 11, 2011).

*The second trial*

During the second jury trial, after the Shacks rested their case, Lawson moved under Rule 50 for a directed verdict, which the district court denied. The jury subsequently returned a verdict for $371,400 in damages on Shack's breach of contract and breach of the implied covenant of good faith and fair dealing claims. The jury awarded the Shacks $147,200 on their breach of contract claim: $50,000 for the security deposit, and $97,200 for other costs related to the business. The jury also awarded the Shacks $224,200 on their breach of the implied covenant of good faith and fair dealing claim: $50,000 for the security deposit, $124,200 for rent, and $50,000 for construction settlement costs. A number of post-trial motions followed.

Lawson first moved for judgment notwithstanding the verdict, or alternatively a new trial, which the district court denied. Lawson then

Supreme Court
OF
Nevada

(O) 1947A

moved for $47,164.08 in prejudgment and post-judgment interest on the $100,000 offset it received in the first trial. The district court denied this motion, finding that the offset and the alleged interest were not recoverable because this court's reversal and remand order eliminated the $100,000 offset. Finally, Lawson moved for a new trial on its breach of contract and abuse of process counterclaims, which the district court denied.

The Shacks moved for costs requesting $19,214.93 in costs for their current law firm and $4,618.51 in costs for their former law firm. The district court awarded the Shacks' current law firm $16,217.53 in costs and their former law firm $2,683.51 in costs, for a total of $18,901.04. The Shacks also moved for $400,222 in attorney fees. Lawson opposed the motion, arguing, among other things, that the Shacks were time-barred from requesting attorney fees under NRCP 54(d)(2)(B) because the motion for attorney fees was filed more than 20 days after the notice of entry of judgment was served. The district court disagreed and found the motion timely, reasoning that Lawson's motion for judgment notwithstanding the verdict or for a new trial tolled the deadline for filing the motion. Consequently, the district court awarded the Shacks the entire $400,222 requested.

Lawson now brings this appeal, challenging the district court's (1) denial of its motion for judgment notwithstanding the verdict, (2) denial of its motion for a new trial, (3) denial of its motion for relief from judgment, (4) denial of its motion for prejudgment and post-judgment

interest on the offset, (5) award of costs to the Shacks, and (6) award of attorney fees to the Shacks.[1]

## DISCUSSION

Prior to resolving the plethora of issues presented on appeal, we turn our attention to a narrow issue of first impression raised here: whether the filing of a post-judgment motion that tolls the time to appeal also tolls NRCP 54(d)(2)(B)'s 20-day deadline to move for attorney fees. We conclude that it does.

---

[1]Lawson also appeals from the district court's overruling of an evidentiary objection during the Shacks' direct examination of Nicolle. Although we conclude that the district court abused its discretion, as explained below, the abuse was harmless. *See* NRCP 61. Nicolle testified that, before signing the lease, she believed the lease would include a $50,000 security deposit and $50,000 in option money. But the lease clearly included a $100,000 security deposit and $100,000 in option money. The district court deemed the testimony relevant based on its belief that the implied covenant of good faith and fair dealing "encompasses the full course of conduct" between parties to a contract, not just what occurs after the execution of the contract. The implied covenant of good faith and fair dealing, however, does not apply during the negotiation or formation phase of a contract. *See* Restatement (Second) of Contracts § 205 cmt. c (1981) ("Bad faith in negotiation, although not within the scope of [the implied covenant of good faith and fair dealing], may be subject to sanctions. Particular forms of bad faith in bargaining are the subjects of rules as to capacity to contract, mutual assent and consideration and of rules as to invalidating causes such as fraud and duress."); *see also Threshold Techs., Inc. v. United States*, 117 Fed. Cl. 681, 708 (2014) ("[T]he covenant of good faith and fair dealing cannot attach until the *start* of plaintiff's implied-in-fact contract with the government." (emphasis added)). Bad faith in negotiations is covered by other concepts like fraud, mistake, or duress. Thus, Nicolle's testimony and statements made during negotiations are generally irrelevant as to the breach of the implied-covenant-of-good-faith-and-fair-dealing claim. *See* NRS 48.025(2) ("Evidence which is not relevant is not admissible.").

As to timing, NRCP 54(d)(2)(B) reads: "[u]nless a statute provides otherwise, the motion [for attorney fees] must be filed no later than 20 days after notice of entry of judgment is served . . . . The time for filing the motion may not be extended by the court after it has expired."

Lawson argues that NRCP 54(d)(2)(B) mandates that a prevailing party must move for attorney fees within 20 days of the entry of judgment with no exception. Lawson asserts that the Shacks missed this filing deadline because the notice of entry of judgment was served on January 9, 2013, and the Shacks' filed their motion for attorney fees on March 4, 2013.

In response, the Shacks argue that NRCP 54(d)(2)(B)'s 20-day deadline does not begin to run until the judgment is final and appealable. They contend that, here, the judgment was tolled when Lawson filed her NRCP 50 and NRCP 59 motions, and thus, they had 20 days from the resolution of those motions to file a motion for attorney fees. Further, the Shacks contend that federal courts have adopted this approach and that it best satisfies the purpose of NRCP 54(d)—to resolve fee disputes in a timely manner and avoid piecemeal litigation.

In reply, Lawson argues that tolling cannot apply because the January 9, 2013, judgment was a final judgment. Further, Lawson asserts that the Shacks' reliance on federal law is misplaced because Nevada's rule contains the sentence, "[t]he time for filing a motion may not be extended by the court after it has expired," while the federal rule does not. Lawson also argues that tolling is impractical.

"Nevada's Rules of Civil Procedure are subject to the same rules of interpretation as statutes." *Vanguard Piping v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 63, 309 P.3d 1017, 1020 (2013). "Statutory

SUPREME COURT
OF
NEVADA

(O) 1947A

interpretation is a question of law that we review de novo." *Id.* (internal quotations omitted). "[W]hen the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it." *Nev. Dep't of Corrs. v. York Claims Servs., Inc.*, 131 Nev., Adv. Op. 25, 348 P.3d 1010, 1013 (2015) (internal quotations omitted). "If, however, a statute is subject to more than one reasonable interpretation, it is ambiguous, and the plain meaning rule does not apply." *Id.* (internal quotations omitted). "When a statute is ambiguous, we construe it consistently with what reason and public policy would indicate the Legislature intended." *Id.* (internal quotations omitted).

We conclude that a plain language reading of NRCP 54(d)(2)(B) does not reveal whether tolling is allowed or prohibited. Thus, we look to reason and public policy. Additionally, we consider federal law interpreting the Federal Rules of Civil Procedure, "because the Nevada Rules of Civil Procedure are based in large part upon their federal counterparts." *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 118 Nev. 46, 53, 38 P.3d 872, 876 (2002); *Humphries v. Eighth Judicial Dist. Court*, 129 Nev., Adv. Op. 85, 312 P.3d 484, 488 n.1 (2013) ("We may consult the interpretation of a federal counterpart to a Nevada Rule of Civil Procedure as persuasive authority.").

As pointed out by the Shacks, many federal courts have implemented tolling under similar circumstances. Like NRCP 54(d)(2)(B), FRCP 54(d)(2)(B) mandates that "[u]nless a statute or a court order provides otherwise, [a] motion [for attorney fees] must . . . be filed no later than 14 days after the entry of judgment." Faced with the same question presented here, "whether the [FRCP] 54(d)(2)(B) time limit is tolled pending the outcome of post-trial motions under [FRCP] 50 or [FRCP] 59,"

the United States Court of Appeals for the Ninth Circuit determined that an "[FRCP] 54(d)(2)(B) motion for fees is timely if filed no later than 14 days after the resolution of [an FRCP] 50(b), [FRCP] 52(b) or [FRCP] 59 motion." *Bailey v. Cnty. of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005). The Ninth Circuit reasoned that these post-trial motions suspend the finality of a district court's judgment, for appellate purposes, because the judgment "was not appealable during the pendency of the post-trial motions." *Id.* This same reasoning has been implemented by the United States Courts of Appeals for the Second, Sixth, and Eleventh Circuits. *Weyant v. Okst*, 198 F.3d 311, 314-15 (2d Cir. 1999) ("[C]ertain types of post-judgment motions interrupt the judgment's finality because judicial efficiency is improved by postponing appellate review of the judgment until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment, . . . [but] finality is restored upon the resolution of the last of any post-judgment motions that operated to suspend finality." (internal quotations omitted)); *Miltimore Sales, Inc. v. Int'l Rectifier, Inc.*, 412 F.3d 685, 688 (6th Cir. 2005) ("When the district court disposes of the [FRCP] 59(e) motion, that order itself is not the 'final' judgment, nor is it itself 'an order from which an appeal lies'; instead, the disposition of the [FRCP] 59(e) motions is an order or ruling that reinstates the finality of the original entry of judgment and a ruling that makes the underlying judgment appealable." (quoting FRCP 54(a))); *Members First Fed. Credit Union v. Members First Credit Union of Fla.*, 244 F.3d 806, 807 (11th Cir. 2001) ("A timely [FRCP] 59 motion to alter or amend judgment operates to suspend the finality of the district court's judgment . . . .").

Nevada's definition of a final judgment aligns with the aforementioned federal courts' reasoning for adopting tolling. We have previously stated that, for appellate purposes, "a final judgment is one that disposes of all the issues presented in the case, and leaves nothing for the future consideration of the court, except for post-judgment issues such as attorney's fees and costs." *Lee v. GNLV Corp.*, 116 Nev. 424, 426, 996 P.2d 416, 417 (2000); *see Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 445, 874 P.2d 729, 733 (1994) ("More precisely, a final, appealable judgment is one that disposes of the issues presented in the case . . . ." (internal quotations omitted)). *Compare* FRCP 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.") *with* NRCP 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies."). Thus, the reasoning from *Bailey, Weyant, Miltimore Sales*, and *Members First Federal* applies equally here. Accordingly, we conclude that a post-judgment motion that tolls NRAP 4(a)'s deadline to appeal also tolls NRCP 54(d)(2)(B)'s filing deadline for a motion for attorney fees until the pending post-judgment tolling motion is decided. *See* NRAP 4(a)(4) ("If a party timely files in the district court any [Rule 50(b), Rule 52(b), or Rule 59] motions under the Nevada Rules of Civil Procedure, the time to file a notice of appeal runs for all parties from entry of an order disposing of the last such remaining motion . . . ."); *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 581-85, 245 P.3d 1190, 1192-95 (2010) (discussing those motions that qualify as a motion to alter or amend under NRCP 59(e)).[2]

---

[2]In this opinion, we consider whether a post-judgment motion that tolls the time frame in which to appeal from a final judgment, under

*continued on next page . . .*

Further, as argued by the Shacks, the adoption of tolling aligns with Nevada's policy interests. Nevada has an interest in "promoting judicial economy by avoiding the specter of piecemeal appellate review." *Ginsburg*, 110 Nev. at 444, 874 P.2d at 733; *see also Winston Prods. Co. v. DeBoer*, 122 Nev. 517, 526, 134 P.3d 726, 732 (2006) (expressing concern for judicial economy and avoiding piecemeal litigation). These same considerations motivated the Second Circuit to adopt tolling. *See Weyant*, 198 F.3d at 314 (stating that there is "a 'historic federal policy against piecemeal appeals'" (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980))). The Second Circuit reasoned that "judicial efficiency is improved by postponing appellate review of the judgment until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment." *Id.* (internal quotations omitted). We recognize that both approaches that the parties argue—tolling and no tolling—are imperfect as to judicial economy. We conclude, nevertheless, that tolling furthers our policy against piecemeal litigation more so than the alternative.

While we recognize that the federal rule and the Nevada rule differ due to Nevada's inclusion of the sentence, "[t]he time for filing the motion may not be extended by the court after it has expired," NRCP

---

*. . . continued*

NRAP 4(a), also tolls NRCP 54(d)(2)(B)'s time frame for filing a motion for attorney fees. Nothing in this opinion affects the time frame in which a party may begin to enforce the judgment, or seek a stay of such enforcement, under NRCP 62.

54(d)(2)(B), we conclude that this extra sentence has no effect on tolling. This extra sentence prevents a district court judge from granting a litigant a second chance at filing a motion for attorney fees if the litigant missed the filing deadline. But tolling moves the deadline for filing a motion for attorney fees to 20 days after the resolution of the last post-judgment tolling motion. For example, a district court would have no need to extend the time to file a motion for attorney fees if the motion is filed 190 days after judgment was entered, but only 18 days after an order deciding a Rule 50(b) motion was entered, because the motion would have been filed within the 20-day deadline with a couple days to spare. Once the 20-day period expires, however, the extra sentence in Nevada's statute would then prohibit any type of extension.

Finally, we disagree with Lawson that tolling is impractical. Lawson essentially contends that a judgment is not final until it includes the verdict and award of attorney fees and costs. Lawson argues that implementing this rule would allow a party to move for attorney fees after the 30-day notice of appeal deadline expires, rendering the opposing party unable to appeal an award of attorney fees. Along with the fact that tolling has apparently functioned in the four aforementioned federal circuits, which have similar appellate rules, for many years without such problems arising, an order awarding attorney fees is "[a] special order entered after final judgment," NRAP 3A(b)(8), and is substantively appealable on its own. *See Winston Prods.*, 122 Nev. at 525, 134 P.3d at 731. Thus, Lawson may appeal an award of attorney fees even after the deadline to file a notice of appeal from the final judgment has passed.

Consequently, due to the similarity between FRCP 54(d)(2)(B) and NRCP 54(d)(2)(B), the persuasive and applicable reasoning of the

Second, Sixth, Ninth, and Eleventh Circuits, and our policy against piecemeal litigation, we hold that an NRCP 54(d)(2)(B) motion for attorney fees is timely if filed no later than 20 days after the resolution of a post-judgment tolling motion.[3]   Therefore, we conclude that the district court did not err in finding the Shacks' motion for attorney fees timely.  With this issue of first impression resolved, we turn to the remaining issues presented on appeal.

*The district court partially erred in denying Lawson's motion for prejudgment and post-judgment interest*

The "legal operation and effect of a judgment" is a question of law, *Ormachea v. Ormachea*, 67 Nev. 273, 291, 217 P.2d 355, 364 (1950), subject to de novo review.  *Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 531, 216 P.3d 779, 782 (2009) ("Questions of law are subject to de novo review.").

The district court found that the $100,000 offset "was wholly reversed and remanded by the Supreme Court of Nevada."  We conclude, however, that because we never explicitly addressed the $100,000 offset in this court's March 9, 2011, and May 11, 2011, orders, the $100,000 offset remains intact.  We also conclude that the Shacks' argument that Lawson somehow waived her right to the $100,000 offset fails.  *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (stating that this court need not consider claims that are not cogently argued nor supported by relevant authority).

---

[3]The scope of our holding includes post-judgment motions made under NRCP 50(b), 52(b), and 59.  *See Bailey v. Cnty. of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005); *see also* NRAP 4(a)(4); *AA Primo Builders*, 126 Nev. at 581-85, 245 P.3d at 1192-95.

We further conclude that the $100,000 offset did not accrue prejudgment or post-judgment interest. Under these facts, the sua sponte offset was merely a $100,000 reduction of the Shacks' original verdict. Consequently, we reverse the district court and instruct it to enter a new judgment in which the Shacks' second verdict is reduced by this $100,000 offset without interest.

*The district court partially abused its discretion in its award of attorney fees to the Shacks*

We review a district court's award of attorney fees for an abuse of discretion. *Bobby Berosini, Ltd. v. PETA*, 114 Nev. 1348, 1354, 971 P.2d 383, 386 (1998). The Shacks moved for and were awarded attorney fees under the terms of the lease. *See Thomas v. City of N. Las Vegas*, 122 Nev. 82, 94, 127 P.3d 1057, 1065 (2006) (stating that attorney fees may be provided for by statute, rule, or contract). The attorney fees provision of the lease reads:

> If either party brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, trial or appeal thereon, shall be entitled to his reasonable attorneys' fees to be paid by the losing party as fixed by the court in the same or separate suit, and whether or not such action is pursued to decision or judgment.

Lawson contests the award of attorney fees on many grounds. We agree with it on one. The district court found that Barbara Lawson individually, the Barbara Ann Hollier Trust, and Acadian Realty, Inc., were all liable for the attorney fees. We conclude, however, that only Acadian Realty, Inc., is liable for attorney fees under the lease.

Contract interpretation, "[i]n the absence of ambiguity or other factual complexities, . . . presents a question of law," which is subject

to de novo review. *Galardi v. Naples Polaris, LLC*, 129 Nev., Adv. Op. 33, 301 P.3d 364, 366 (2013) (internal quotations omitted). "The objective in interpreting an attorney fees provision, as with all contracts, is to discern the intent of the contracting parties." *Davis v. Beling*, 128 Nev., Adv. Op. 28, 278 P.3d 501, 515 (2012) (internal quotations omitted). "Traditional rules of contract interpretation are employed to accomplish that result." *Id.* (internal quotations omitted). "Therefore, the initial focus is on whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Id.*

We conclude that the lease clearly states that only a party to the lease can be held responsible for attorney fees in an action to enforce the lease. It is uncontested that only Acadian Realty, Inc., was a party to the lease, and Barbara and the trust were not. Therefore, we reverse the district court's finding that all three parties were liable for attorney fees but affirm the attorney fees award against Acadian Realty, Inc.[4]

In conclusion, along with establishing the tolling properties of certain post-judgment motions upon NRCP 54(d)(2)(B), we affirm the judgment of the district court in all respects with two exceptions. First, we conclude that the $100,000 offset awarded to Lawson in the first trial remains intact. Second, we conclude that, per the terms of the lease, Barbara Lawson and the Barbara Ann Hollier Trust are not liable to the

---

[4]Furthermore, we affirm the district court's denial of Lawson's NRCP 50(b) motion for judgment as a matter of law, NRCP 59 motion for a new trial, and NRCP 60(b) motion for relief from the judgments reached in the first trial. We also affirm the district court's award of costs to the Shacks.

Shacks for the attorney fees award. Accordingly, we reverse the district court's judgment on these two issues.

_____, J.
Gibbons

We concur:

_____, J.
Saitta

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A